IRWIN M. ZALKIN, ESQ. (#89957)
DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (#280813)
The Zalkin Law Firm, P.C.
10590 West Ocean Air Drive, Ste 125
San Diego, CA 92130
Tel: 858-259-3011
Fax: 858-259-3015
Email: Irwin@zalkin.com
dms@zalkin.com
alex@zalkin.com
ryan@zalkin.com

AMY POYER, ESQ. (#277315)
California Women's Law Center
360 N. Pacific Coast Hwy, Ste 2070
El Segundo, CA 90245
Tel: 323-951-1041
Email: amy.poyer@cwlc.org

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Courtney Whittier, Individually, <br><br>    Plaintiff, <br><br> vs. <br><br> The University of Southern California, <br><br>    Defendant. | Case No.: 2:20-cv-09539 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1) **Violation of Title IX – Pre-Assault** <br> 2) **Violation of Title IX – Post Assault** <br> 3) **Violation of Title IX – Intentional Discrimination** <br> 4) **Violation of Title IX – Erroneous Outcome** <br><br> **[Demand for Jury Trail]** |

## PRELIMINARY ALLEGATIONS

1. Plaintiff Courtney Whittier was, at all times relevant, a student at the University of Southern California, Gould School of Law ("Gould").

2. Defendant University of Southern California ("USC") is, and at all times relevant hereto was a not-for-profit corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. Plaintiff is informed and believes, and on that basis alleges that at all times relevant hereto, USC was the owner of a business and/or facility licensed to do business and actually doing business in the State of California.

3. USC receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C. § 1681. ("Title IX")

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to this claim took place in this judicial district, and Defendants reside in this judicial district.

### USC's Sexual Misconduct Policies

6. USC claims that its policies "have been established to create a safe and productive academic and work environment. All university employees and students are expected to be familiar with these policies and to follow them."

7. At all times relevant herein, USC maintained a policy on sexual misconduct entitled Student Misconduct – Sexual, Interpersonal and Protected Class Misconduct ("Policy").

8. The Policy stated that USC was, "…committed to stopping prohibited conduct, preventing its recurrence, addressing its effects, and eliminating hostile environments." The Policy also stated that among USC's goals was, a fair and impartial process afforded

to all parties. To that end, the Policy stated, "The university's response to prohibited conduct is grounded in the fair application of policy and procedure."

9. The Policy stated that USC, "…seeks compliance with all statutes prohibiting discrimination in education, including…Title IX of the education amendments of 1972…the Jeanne Clery Disclosures of Campus Security Act (as amended by the Violence Against Women Reauthorization Act of 2013)…"

10. According to the Policy, "Consent must be affirmative. 'Affirmative consent' means affirmative, conscious, and voluntary agreement to engage in sexual activity." The Policy further states, "It is the responsibility of each person involved to ensure that they have affirmative consent of the other(s) to engage in sexual activity…Lack of protest or resistance does not mean consent, nor does silence mean consent…Consent cannot be inferred from an existing or previous dating relationship. Previous sexual activity between the parties cannot, by itself, be assumed to be an indicator of consent. There must be mutual consent to engage in the sexual activity each time it occurs. Consent to engage in sexual activity at one time is not consent to engage in the same or different sexual activity at a different time."

11. With respect to investigation of a report of prohibited conduct, the Policy stated that both the reporting and responding party were entitled to several procedural safeguards, including but not limited to, "[e]qual treatment", and, "<u>[a] fair, thorough, reliable, neutral and impartial investigation by a trained and experienced investigator</u>."

12. With respect to timing, the Policy stated that investigations were to be completed within 60 calendar days. If an extension of the 60 days was needed, the parties were to be provided, in writing, of a justification for any such extension as well as notified of an anticipated completion date.

13. The Policy required USC to engage in a fact gathering investigation following a report of sexual misconduct. At the conclusion of an investigation, both the reporting and responding party were to be given equal time and opportunity to review all of the evidence gathered by the USC investigator.

14. Upon completion of the investigation and hearing, the Policy required USC to provide a Summary Administrative Review to both parties outlining its findings.

## USC's History of Indifference To Sexual Misconduct On Campus

15. USC has a history of covering up, and/or responding with indifference to sexual misconduct on campus.

16. Based on information and belief, USC knew since as early as 1988 that one of its student health physicians, Dr. George Tyndall, was sexually abusing female students at USC's student health center. Despite such knowledge, USC covered up Dr. Tyndall's abuse for decades, failing to report him to law enforcement or the California Medical Board. As a result, Dr. Tyndall continued to sexually abuse female USC students for approximately 30 years.

17. In 2019, USC settled a federal class action lawsuit brought on behalf of Dr. Tyndall's victims for $250 million. Currently, hundreds of Dr. Tyndall's victims are proceeding with lawsuits against USC in California Superior Court as well.

18. Prior to Plaintiff's sexual assault, USC's failures with respect to compliance with Title IX were so widespread that the United States Department of Education, Office for Civil Rights ("OCR") initiated several investigations into its Title IX compliance.

19. During one investigation in 2018, the OCR found several instances in which USC failed to comply with federal guidelines interpreting IX.  As a result of this investigation, USC entered into a resolution agreement with the OCR. In the Resolution Agreement, USC agreed to, among other items:

   a. Overhaul its Title IX Office and reporting requirements;
   b. Ensure that the Title IX Office has the appropriate authority to coordinate compliance;
   c. Revise the system of complaint tracking so that all complaints will be accessible;
   d. Issue a directive mandating that all appropriate employees will report sex discrimination to the Title IX Office;
   e. Accurately and completely keep records of complaints;
   f. Upon receipt of a complaint against an employee, run a search through the system to find any other similar complaint;
   g. Report to OCR self-monitoring;
   h. Review Title IX procedures to provide notice to parties;
   i. Provide notice to faculty of Title IX and this investigation;
   j. Provide Title IX training to students and staff.

**Background Facts Related To Plaintiff**

20. Plaintiff enrolled at USC Gould School of Law in August of 2015.

21. In December of 2017, when Plaintiff was a third year law student, she attended a school sponsored and/or sanctioned social event at a local bar. Plaintiff had several drinks that night to the point that she became incapacitated.

22. While incapacitated, Plaintiff was raped by Perpetrator Doe, another USC student at Perpetrator's apartment.

23. On April 13, 2018, Plaintiff reported the rape to the Dean of the law school who in turn reported it to USC's Title IX Office.

24. Shortly thereafter, Plaintiff had an in-person meeting with Gretchen Means (USC's Title IX Coordinator), Kegan Allen (a note taker), and a third unknown person. Means took

Plaintiff's statement, and explained the complaint procedures. Plaintiff then indicated that she wanted to initiate a formal investigation.

25. In response, Means pressured Plaintiff not to initiate a formal investigation. Means asked Plaintiff to wait 24 hours and then decide if she indeed wanted to initiate formal investigation. After 24 hours, Plaintiff called the Title IX Office and left a message indicating she wanted to initiate a formal investigation. Nobody returned her call. On the next business day, Plaintiff went to the Title IX Office to tell Means that Plaintiff wanted to initiate a formal investigation. Means was unavailable at that time. Finally, Plaintiff met with the Dean of the law school to report what was happening. The Dean contacted Means directly who confirmed that a formal investigation would be commenced.

26. The Title IX Office assigned Investigator Doe to investigate Plaintiff's report.[1] Based on information and belief, Investigator Doe had, at the time of the assignment, only recently been hired by USC and had no training as a Title IX investigator.

27. Plaintiff met with Investigator Doe multiple times and submitted several pieces of evidence to Investigator Doe.

28. Perpetrator chose not to provide an initial statement. Instead, Perpetrator hired a private attorney named Mark Hathaway to represent Perpetrator during USC's investigation and resolution process.

29. Based on information and belief, at the time, Mr. Hathaway had represented several male USC students who had been accused of sexual misconduct in civil lawsuits against USC. Mr. Hathaway had been very successful in these civil lawsuits against USC on behalf of accused male students.

---

[1] Investigator Doe has filed a federal whistleblower lawsuit against USC in the District Court for the Central District of California, Case No. 2:20-cv-06098. In order to protect Investigator Doe's identity, Plaintiff will refer to him/her only using the pseudonym "Investigator Doe."

COMPLAINT

30. Based on information and belief, because of Mr. Hathaway's representation of Perpetrator, USC violated its own policies in favor of Perpetrator. Specifically, in violation of its Policy, USC allowed Perpetrator to review all of Plaintiff's submitted evidence before submitting his own evidence. This allowed Perpetrator to tailor his evidence to specifically respond to Plaintiff's submitted evidence. Additionally, in violation of the Policy, Perpetrator was allowed to submit additional evidence after providing his initial evidence. Plaintiff was never told about the additional evidence, and therefore did not have an opportunity to address the additional evidence during her hearing.

31. Most egregiously, based on information and belief, USC predetermined the outcome of Plaintiff's complaint in favor of Perpetrator before finishing its investigation. In fact, based on information and belief, once Means heard that Mr. Hathaway was representing Perpetrator, Means told Investigator Doe that USC would resolve the investigation in favor of Plaintiff, "over [her] dead body."

32. Following its "investigation," on October 19, 2018, USC resolved Plaintiff's complaint consistent with its predetermination: in favor of Perpetrator. USC issued a Summary Administrative Review ("SAR") in which it concluded that on the evening of Plaintiff's assault: (1) Plaintiff and Perpetrator engaged in sexual relations, (2) Plaintiff was incapacitated at the time, but (3) Perpetrator did not know, nor had reason to know that Plaintiff was incapacitated.

33. USC's SAR failed to disclose that it allowed Perpetrator to submit evidence after reviewing Plaintiff's evidence, in violation of its own Policy.

34. The SAR was signed by Investigator Doe.

**Investigator Doe's Federal Lawsuit Against USC**

35. On July 8, 2020, Investigator Doe filed a federal lawsuit against USC asserting several causes of action.

36. In Investigator Doe's lawsuit, he/she alleged that he/she was hired as a Senior Investigator in USC's Office of Conduct, Accountability, and Professionalism.

37. However, shortly after Investigator Doe was hired, he/she alleged that USC assigned him/her to investigate two Title IX complaints even though he/she had informed USC that he/she had no training as a Title IX investigator. This assignment, Investigator Doe alleged, violated USC's consent decree with the OCR.

38. Investigator Doe's lawsuit further outlines several disturbing practices engaged in by USC to protect perpetrators, influence outcomes of investigations, and ignore USC policies.

39. For example, Investigator Doe alleged that he/she began an investigation into two high ranking employees at USC. Prior to the investigation, Means informed Investigator Doe that the complaining party had anticipated termination and therefore made the report against these USC employees as an attempt to avoid termination. This statement indicated Means' prejudgment of the complaint. Further, during the investigation, Investigator Doe reported to Means that even though the investigation was ongoing, Investigator Doe had discovered corroborating evidence that these employees had indeed violated USC policy. In response to this report, USC removed Doe from this investigation and placed him/her on leave. Even more egregiously, USC subsequently promoted the two employees who were the subjects of the investigation.

40. Investigator Doe's lawsuit also alleges several troubling allegations regarding Plaintiff's investigation in particular. Investigator Doe alleges that he/she opposed Means' decision to allow John Doe to review all of Plaintiff's evidence prior to submitting his

evidence – a decision that directly violated USC's own Policy. Investigator Doe's opposition was ignored and overruled. In response to Investigator Doe's opposition, Means' retaliated against and harassed Doe.

41. Doe also alleged that the SAR received by Plaintiff failed to disclose that Perpetrator Doe was allowed to review all of Plaintiff's evidence before submitting his own. What's more, despite his/her opposition, and despite the fact that Investigator Doe was removed from Plaintiff's investigation after raising concerns over policy violations, Investigator Doe's signature was affixed to the SAR by USC without his/her consent.

42. Investigator Doe alleged that he/she made a formal complaint to USC alleging that Means was retaliating against Investigator Doe for insisting that USC comply with its written Title IX procedures, including the Policy.

### USC's Culture Of Sexual Violence At The Gould School of Law

43. While Plaintiff was a student at Gould, Gould was replete with sexual misconduct.

44. Based on information and belief, while Plaintiff was enrolled at Gould, one male Gould student had sexually assaulted three different Gould female students.

45. Based on information and belief, while Plaintiff was enrolled at Gould, a second male Gould student had sexually assaulted two different females, at least one of which was another Gould student.

46. Based on information and belief, while Plaintiff was enrolled at Gould, Perpetrator not only sexually assaulted Plaintiff, but also sexually harassed other female Gould students.

47. The culture of sexual violence at Gould was so prominent, that one female Gould student conducted an informal survey of the female Gould students in her class. The survey asked whether the survey respondent had ever experienced sexual misconduct by a male Gould student. Several student respondents reported experiencing some form of sexual misconduct.

48. Based on information and belief, administrators at Gould were aware of the culture of sexual violence that existed at Gould during all times relevant herein.

49. Based on information and belief, Gould administrators did nothing in response to the prevalent culture of sexual misconduct at Gould.

## COUNT I
## VIOLATION OF TITLE IX – PRE ASSAULT

50. Plaintiff incorporates paragraphs 1 through 46 of this Complaint as if fully set forth herein.

51. USC maintained a policy of indifference to sexual misconduct both campus-wide, as well as at Gould in particular.

52. USC's policy of indifference created a heightened risk of sexual misconduct on campus that was known and/or obvious to USC.

53. USC knowingly and deliberately concealed the breadth of the problem of sexual misconduct on its campus, failed to enforce its own policies for responding to sexual misconduct, and often times predetermined outcomes of Title IX investigations in favor of respondents prior to their completion, creating an environment in which USC tacitly approved sexual misconduct, and sexual predators were able to operate with impunity and without fear of consequence.

54. Based on information and belief, USC knowingly and deliberately failed to adhere to the guidelines and recommendations promulgated by the DOE in both its 2001 Guidance and DCL.

55. Based on information and belief, USC failed to properly train its employees, including its Title IX investigators.  USC also failed to train its students with respect to identifying sexual misconduct, preventing its occurrence, and reporting its occurrence.

COMPLAINT

56. Prior to Plaintiff's assault, USC's Title IX policies and practices were so deficient that the OCR investigated and ultimately concluded that USC had violated Title IX in the manner in which it responded to reports of sexual misconduct.

57. The heightened risk created by USC's policy of indifference was subject to USC's control, and Plaintiff was sexually assaulted following a USC sanctioned and sponsored social event.

58. Plaintiff could not have reasonably known about USC's policy of indifference until she was contacted by the attorney representing Investigator Doe on July 8, 2020.

59. As a result of USC's policy of indifference, which created a heightened risk for sexual misconduct to occur, Plaintiff was sexually assaulted by Perpetrator.

60. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT II
## VIOLATION OF TITLE IX – POST-ASSAULT

61. Plaintiff incorporates paragraphs 1 through 46 of this Complaint as if fully set forth herein.

62. USC is an educational institution and is the recipient of federal financial assistance.

63. Plaintiff reported her sexual assault to the Dean of Gould, who in turn reported it to USC's Title IX Office. Both of these individuals were/are responsible employees who had the ability to respond to Plaintiff's report.

64. USC acted with deliberate indifference in response to Plaintiff's report by failing to respond reasonably to Plaintiff's report. For example, USC intentionally deviated from its own policies in order to provide Perpetrator with an unfair advantage during its investigation of Plaintiff's complaint. USC showed further deliberate indifference by predetermining the outcome of Plaintiff's complaint in favor of Perpetrator prior to the conclusion of the investigation.

65. As a result of USC's Title IX violation, Plaintiff suffered emotional distress in the form of a loss of educational opportunities and/or benefits, including:

   a. A drop in grades;
   b. Avoidance of school sponsored social events because Perpetrator was present;
   c. Avoidance of certain areas of campus because Perpetrator was present;
   d. Avoidance of certain courses in which Perpetrator was enrolled.

## COUNT III
## VIOLATION OF TITLE IX – INTENTIONAL DISCRIMINATION

66. Plaintiff incorporates paragraphs 1 through 46 of this Complaint as if fully set forth herein.

67. USC intentionally discriminated against Plaintiff based on her gender in the manner in which it responded to Plaintiff's complaint of sexual assault.

68. Even though USC represented to Plaintiff that it was following its policies, including providing a fair and neutral investigation into Plaintiff's report, in reality, USC's investigation process was nothing more than a charade intended to mislead Plaintiff into believing that she received a fair and proper investigation.

69. USC's investigation into Plaintiff's complaint favored Perpetrator, a male, in every way possible. For example, Perpetrator was allowed to review Plaintiff's evidence prior to submitting his own evidence, providing him the opportunity to tailor the evidence he

submitted to directly respond to Plaintiff's evidence. Plaintiff was not given the same opportunity. Perpetrator was allowed to submit additional evidence, which Plaintiff never had an opportunity to respond to. Worse, USC predetermined the outcome of Plaintiff's complaint in favor of Perpetrator even before the investigation had concluded.

70. Based on information and belief, USC's decision to predetermine the outcome of Plaintiff's complaint was part of a de facto practice by USC to intentionally predetermine outcomes of Title IX investigations in favor of male respondents.

71. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT IV
## VIOLATION OF TITLE IX – ERRONEOUS OUTCOME

72. Plaintiff incorporates paragraphs 1 through 46 as if fully set forth herein.

73. In resolving Plaintiff's complaint, USC came to an erroneous outcome.

74. The allegations incorporated herein cast some doubt on the accuracy of the outcome of Plaintiff's report. Specifically, USC had a practice of predetermining outcomes in favor of its desired resolution. And, USC predetermined the outcome of Plaintiff's complaint in favor of Perpetrator due to his attorney's involvement.

75. USC also failed to follow its own policies in responding to Plaintiff's complaint. For example, USC allowed Perpetrator to review all of Plaintiff's submitted evidence before providing his own evidence.

76. A particularized causal connection existed between USC's desired, flawed outcome and gender bias. Specifically, prior to the conclusion of USC's investigation into Plaintiff's report, Means explicitly stated that USC would find in favor of Plaintiff "over [her] dead body." On information and belief, Means made this statement because Perpetrator hired an attorney who had successfully sued USC multiple times on behalf of accused, male students. USC also had a de facto practice of predetermining Title IX investigations in favor of the accused.

77. As a result of the aforementioned erroneous outcome, Plaintiff suffered emotional distress, including but not limited to, emotional distress, fear, anxiety, and trauma; lost past and future earnings and earning capacity; and delays in pursuing her career.

**WHEREFORE, PLAINTIFF** prays for a jury trial and for judgment against Defendant as follows:

### FOR ALL CAUSES OF ACTION

1. For past, present, and future non-economic damages in an amount to be determined at trial;
2. For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages and others, in an amount to be determined at trial;
3. Any appropriate statutory damages;
4. For costs of suit;
5. For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;
6. For attorney's fees pursuant to 42 U.S.C. § 1988 or as otherwise allowable by law;
7. For such other and further relief as the Court may deem proper.

Date: October 16, 2020

Respectfully submitted,

By: /s/ Alexander S. Zalkin
Alexander S. Zalkin, Esq.
THE ZALKIN LAW FIRM, P.C.
10590 W. Ocean Air Dr., Ste. 125
San Diego, CA 92130

Amy Poyer, Esq.
THE CALIFORNIA WOMEN'S LAW CENTER
360 N. Pacific Coast Hwy., Ste. 2070
El Segundo, CA 90245

*Attorneys for Plaintiff*

**COMPLAINT**