CAMERON W. FOX (SB# 218116)
cameronfox@paulhastings.com
JESSICA E. MENDELSON (SB# 280388)
jessicamendelson@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendant
UNIVERSITY OF SOUTHERN CALIFORNIA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY WHITTIER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California corporation; and DOES 1-20, inclusive,<br><br>Defendant. | CASE NO. 2:20-cv-09539 DSF (RAOx)<br><br>**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date:       May 23, 2022<br>Time:      1:30 p.m.<br>Dept.:     7D<br>Judge:    Hon. Dale S. Fischer<br><br>Complaint Filed:    October 16, 2020<br>Trial Date:            January 17, 2023 |

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................7

II.    FACTUAL BACKGROUND ..............................................................9

       A.   USC Has Robust Policies Against Sexual Harassment And
            Sexual Misconduct, and Trains Students On Those Topics. .......9

       B.   ████████████████████████████ ..................................10

       C.   ████████████████████████████████ ..........................10

       D.   ████████████████████████████████ ..........................11

       E.   ███████████████████████ ...........................................12

       F.   ███████████████████████████ .....................................14

       G.   Ms. Whittier Chose Not To Appeal USC's Decision. ...............14

       H.   ███████████████████████████ .....................................14

III.   OVERVIEW OF APPLICABLE LAW AND LEGAL STANDARDS ........15

IV.    MS. WHITTIER'S FIRST CAUSE OF ACTION ("TITLE IX – PRE-
       ASSAULT") FAILS AS A MATTER OF LAW ...........................................16

       A.   █████████████████████████████ ................................17

       B.   Ms. Whittier Cannot Establish That The University Controlled
            The Location Of Her Alleged Assault. ...................................20

V.     MS. WHITTIER'S SECOND CAUSE OF ACTION ("TITLE IX –
       POST-ASSAULT") FAILS AS A MATTER OF LAW .................................20

       A.   USC's Response Was More Than Reasonable – It Followed Its
            Policies And Provided A Prompt, Fair, And Robust Review Of
            Ms. Whittier's Claims. ...........................................................21

B.  Ms. Whittier Was Not Subjected To, Or Vulnerable To, Further Assault Or Harassment After Her Complaint. ...................................... 22

C.  Ms. Whittier Failed To Exhaust Judicial Remedies Necessary For This Claim By Failing To File A Petition For Administrative Mandamus. ................................................................. 23

VI.  MS. WHITTIER'S THIRD CAUSE OF ACTION ("TITLE IX – ERRONEOUS OUTCOME") FAILS AS A MATTER OF LAW ............... 25

A.  Ms. Whittier Cannot Show That The Outcome Of The Proceeding Was Erroneous. ...................................................... 25

B.  Ms. Whittier Failed To Exhaust Judicial Remedies By Failing To File A Petition For Administrative Mandamus. ............................ 26

C.  Ms. Whittier Cannot Show The Outcome Of USC's Investigation Was Incorrect *Because Of Her Gender*. ........................ 26

D.  An Erroneous Outcome Claim Is Not Available To Ms. Whittier (Given Her Role As An Alleged *Victim*). ............................................ 27

VII.  MS. WHITTIER'S FOURTH CAUSE OF ACTION ("TITLE IX – INTENTIONAL DISCRIMINATION") IS NOT A SEPARATE CLAIM, AND IT IS DUPLICATIVE OF HER OTHER CLAIMS ANYWAY ........................................................................................ 28

VIII.  CONCLUSION ........................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Austin v. Univ. of Oregon*,
  925 F.3d 1133 (9th Cir. 2019)................................................................16, 25, 26

*Barnett v. Kapla*,
  No. 20-CV-03748-JCS, 2020 WL 7428321
  (N.D. Cal. Dec. 18, 2020)......................................................................................23

*Borkowski v. Baltimore Cnty.*,
  492 F. Supp. 3d 454 (D. Md. 2020) ....................................................................27

*Brown v. Arizona*,
  23 F.4th 1173 (9th Cir. 2022)....................................................................8, 15, 20

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ......................................................................................*passim*

*Doe 1 v. Manhattan Beach Unified Sch. Dist.*,
  No. 19-cv-6962 DDP, 2021 WL 3883910
  (C.D. Cal. Aug. 31, 2021), *appeal dismissed*,
  2021 WL 7366517 (9th Cir. Dec. 10, 2021) .....................................................27

*Doe v. Brown Univ.*,
  166 F. Supp. 3d 177 (D.R.I. 2016).......................................................................27

*Doe v. Cal. Inst. of Tech*,
  No. 2:18-cv-09178-SVW-JEM, 2019 WL 4238888
  (CD. Cal. Apr. 30, 2019).......................................................................................24

*Doe v. Cal. Inst. of Tech.*,
  No. 2:19-cv-01005-AB (KSx),
  2020 WL 3978081 (C.D. Cal. May 12, 2020)..................................................19

*Doe v. Cal. Inst. of Tech.*,
  No. 2:19-CV-01005-AB (KSX), 2019 WL 8645652
  (C.D. Cal. Aug. 13, 2019) .....................................................................................24

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) ...............................................................................16

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) ...................................................................................27

*Doe v. Cummins*,
  662 F. App'x 437 (6th Cir. 2016)........................................................................27

*Doe v. Marymount Univ.*,
   297 F. Supp. 3d 573 (E.D. Va. 2018) .................................................. 27

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2018) ............................................................. 25

*Doe v. Ohio State Univ.*,
   239 F. Supp. 3d 1048 (S.D. Ohio 2017) ........................................... 27

*Doe v. Regents of the Univ. of Cal.*,
   891 F.3d 1147 (9th Cir. 2018) ..................................................... 23, 24

*Doe v. Salisbury Univ.*,
   123 F. Supp. 3d 748 (D. Md. 2015) .................................................. 27

*Doe v. Syracuse Univ.*,
   341 F. Supp. 3d 125 (N.D.N.Y. 2018) .............................................. 27

*Doe v. Trustees of the Univ. of Pa.*,
   270 F. Supp. 3d 799 (E.D. Pa. 2017) ............................................... 27

*Doe v. Univ. of Mass.-Amherst*,
   No. 14-30143-MGM, 2015 WL 4306521
   (D. Mass. July 14, 2015) .................................................................. 27

*Doe v. Univ. of the Pac.*,
   No. CIV. S-09-764 FCD/KJN, 2010 WL 5135360
   (E.D. Cal. Dec. 8, 2010), *aff'd*,
   467 F. App'x 685 (9th Cir. 2012) (unpublished) ............................. 19

*Doe v. Washington & Lee Univ.*,
   No. 6:14-CV-00052, 2015 WL 4647996
   (W.D. Va. Aug. 5, 2015) .................................................................. 27

*Griggs v. Teichert Const., Inc.*,
   No. 2:07-CV-01117 JAM-KJM, 2008 WL 5099620
   (E.D. Cal. Dec. 1, 2008) .................................................................. 28

*Gupta v. Stanford Univ.*,
   124 Cal. App. 4th 407 (2004) ..................................................... 24, 25

*Gutkin v. Univ. of S. Cal.*,
   101 Cal. App. 4th 967 (2002) .......................................................... 24

*Johnson v. City of Loma Linda*,
   24 Cal. 4th 61 (2000) ....................................................................... 24

*Karasek v. Regents of Univ. of Cal.*,
   956 F.3d 1093 (9th Cir. 2020) .................................................. *passim*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................ 16

*Mosavi v. Mt. San Antonio Coll.*,
   No. CV 15-4147-MWF, 2018 WL 5911764
   (C.D. Cal. May 10, 2018), *aff'd*,
   805 F. App'x 502 (9th Cir. 2020) ................................................... 22

*Paternostro v. City of Lodi*,
   No. 2:17-cv-02062-TLN-KJN, 2021 WL 1985438
   (E.D. Cal. May 18, 2021) ............................................................... 28

*Powell v. Saint Joseph's Univ.*,
   No. 17-4438, 2018 WL 994478
   (E.D. Pa. Feb. 20, 2018) ................................................................ 27

*Roe v. Pa. State Univ.*,
   No. 18-2142, 2019 WL 652527
   (E.D. Pa. Feb. 15, 2019) ................................................................ 28

*Sahm v. Miami Univ.*,
   110 F. Supp. 3d 774 (S.D. Ohio 2015) .......................................... 27

*Schwake v. Ariz. Bd. of Regents*,
   967 F.3d 940 (9th Cir. 2020) ................................................... 16, 28

*United States v. Utah Constr. & Mining Co.*,
   384 U.S. 394 (1966) ....................................................................... 24

*Wells v. Xavier Univ.*,
   7 F. Supp. 3d 746 (S.D. Ohio 2014) .............................................. 27

*Yusuf v. Vassar Coll.*,
   35 F.3d 709 (2d Cir. 1994) ............................................................ 27

**STATUTES**

20 U.S.C. § 1232g (FAMILY EDUCATIONAL RIGHTS & PRIVACY ACT
   (FERPA)) ................................................................................... 7, 13

20 U.S.C. § 1681 (TITLE IX) ........................................................ *passim*

20 U.S.C. § 1681(a) ...................................................................... 7, 15

42 U.S.C. § 1983 ................................................................................ 24

CAL. CIV. PROC. CODE § 1094.5 ......................................... 23, 24, 25

**RULES**

FED. R. CIV. P. 11 ............................................................................... 8

FED. R. CIV. P. 56(a) ....................................................................... 16

# I.    **INTRODUCTION**

[black redaction block]

¹

[black redaction block]

Ms. Whittier now seeks to hold USC liable under Title IX: [black redaction block] (ii) for supposedly conducting an "inadequate" investigation, and (iii) for reaching what she believes was the wrong conclusion at the end of the investigation.  Her claims fail as a matter of law:

*First,* there is no evidence that Ms. Whittier's gender motivated (or even influenced) anything in this case.  Importantly, [black redaction block]

Without a viable theory of gender bias, there can be no Title IX claim.  20 U.S.C. § 1681(a) (providing no person shall be discriminated against "on the basis of sex").

---

¹ In this brief and the Separate Statement, USC refers to him as "John Doe," out of respect for his privacy and consistent with the Family Educational Rights and Privacy Act (FERPA).  Ms. Whittier elected to sue in her own name, rather than as a Jane Doe, and so her name is used by USC, consistent with her pleadings.

*Second,* each of the specific theories of Title IX liability that Ms. Whittier has alleged as separate "claims" fails in its own right:

- Ms. Whittier's ***pre-assault*** claim (seeking to hold USC liable for causing the "assault") fails because ███████████████████████ ███████████████████████████████████████ Moreover, ██████████████████████████ and therefore outside of USC's control. *Brown v. Arizona*, 23 F.4th 1173, 1179-80 (9th Cir. 2022) (affirming summary judgment on the ground that "University did not have substantial control over the context or environment where [plaintiff's] assault occurred — [a] private, off-campus residence").

- Ms. Whittier's ***post-assault*** claim (claiming that USC violated its investigation procedures) fails because ██████████████████ ██████████████████████████████████████████████; (ii) USC did not have control over ████████████████ at issue; (iii) she did not experience any further harassment as a result of USC's investigation into her Complaint; and (iv) she failed to exhaust judicial remedies on this claim.

- Ms. Whittier's ***erroneous outcome*** claim fails because she cannot show that the outcome was, in fact, erroneous or that the outcome was due to gender bias.  Further, her claim is barred because she failed to exhaust judicial remedies, and because this type of claim is not available to her as an alleged victim (████████████████████████████ ████████ which is a prerequisite).

As context for the legal deficiencies of Ms. Whittier's claims, it should also be noted that Ms. Whittier admitted in deposition that many key allegations in the Complaint are factually incorrect, and/or lack factual basis.[2]  For example, in

_____

[2] USC has served multiple Rule 11 notices.  It served a Rule 11 motion on March 2,

1   support of her post-assault claim, the Complaint alleges that USC wrongly

2   "allowed [John Doe] to submit evidence after reviewing Plaintiff's evidence, in

3   violation of its own Policy." Compl. ¶ 33. But that does not violate USC's policy,

4   and

5

6

7

8

9

10

11

12

13   [4]   These

14   issues reflect a broader point: Ms. Whittier's case was pled to *look* like a viable

15   Title IX action, but the facts and the evidence necessary to back up the complaint

16   do not exist.

17        Against this background, and for all of the reasons described in this motion,

18   Ms. Whittier's Complaint should be dismissed.

19   **II.   FACTUAL BACKGROUND**

20        **A.   USC Has Robust Policies Against Sexual Harassment And Sexual**
             **Misconduct, and Trains Students On Those Topics.**

21

22        USC has robust policies governing sexual harassment and sexual misconduct,

23   as well as strong procedures for investigating complaints of policy violations.

24   _____

25   2022. Ms. Whittier's counsel has neither responded nor sought dismissal.



DEFENDANT USC'S MPA ISO MOTION FOR
SUMMARY JUDGMENT
U.S.D.C., Cal. C.D., No. 2:20-CV-09539 DSF (RAOX)

UF 1. It requires admitted students --- before enrolling --- to attend three online trainings about alcohol use, sexual consent, and campus safety. Once enrolled, students receive regular educational notices regarding USC's policies, and are required to participate in a series of trainings on sexual harassment and sexual misconduct. (UF 2.)

**B.** [redacted]

**C.** [redacted]



1 ████████████████████████[5]████████████████████
2 ██████████████████████████████████████████████
3 ██████████████████████████████████████████████
4 ███████████████████████████████████████████
5 ████████████████
6 ████████████████████████████████████████████
7 ██[6]████████████████████████████████████████████
8 ██████████████████████████████████████████████
9 ██████████████████████████████████████████████
10 ██████████████████████████████████████████████
11 ██████████████████[7]████████████

12 **D.** ███████████████████████████████
13 █████████████████████████████████████
14 ██████████████████████████

15 ████████████████████████████████████████
16 ██████████████████████████████████████████████
17 ██████████████████████████████████████████████
18 ██████████████████████████████████████████████
19 ████████████████████████████[8]██████████████████
20 ██████████████████████████████████████████████
21 ██████████████████████████████████████████████
22 ████████████████████████████████████████

23 [5] ██████████████████████████████████
24 ██████████████████████████████
25 [6] ██████████████████████████████████████
26 ████████████████ This memorandum does the same.
27 [7] USC protects the identities of students who are not parties to litigation by using their initials, rather than their full names.
28 [8] ████████████████████████████



[redacted]

**E.** [redacted]

[redacted][9][redacted]

[9] The numbering of this policy changed during the investigation. [redacted]

[redacted] [10] [redacted] [11] [redacted] [12] [redacted]

[10] USC has used the initials of the students who are third-party witnesses, rather than their full names, in light of its obligations under FERPA. Their full names appear in the decision, which has been filed subject to sealing.

[11] [redacted]

[12] [redacted]

**F.**

███████████████████████████████████
██████████████              ███████
█████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████

**G.**   **Ms. Whittier Chose Not To Appeal USC's Decision.**

USC's policy provides students with a right to appeal decisions in student misconduct cases.  (UF 66.)  Ms. Whittier chose not to appeal.  (UF  67.)[13]

**H.**

██████████████████████████████████
████████████████████          ████████
██████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████

_____

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
█████████████████               ██████

### III.   <u>OVERVIEW OF APPLICABLE LAW AND LEGAL STANDARDS</u>

**Title IX.**  Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a)).

Three theories of institutional Title IX liability are at issue in this case:

1.   Under a ***pre-assault*** theory, a school can be liable for deliberately creating an atmosphere that allowed the sexual misconduct at issue to occur.  This theory requires that "the school . . . exercise[d] substantial control over *both* the harasser and the context in which the known harassment occur[red]" and that "the school's deliberate indifference . . . subject[ed the plaintiff] to [the misconduct]".[14]

2.   Under a ***post-assault*** theory, a school can be liable if it acts with "deliberate indifference" to the assault or harassment, such that the school's "response . . . or lack thereof [was] clearly unreasonable in light of the known circumstances."  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).  The plaintiff must show that the school's actions amounted to "an official decision . . . not to remedy" the discriminatory assault or harassment.[15]  A school's failure to follow its own policies for investigating and addressing misconduct is insufficient.[16]  In *Davis*, the Supreme Court has emphasized that Title IX does not require that schools purge all alleged harassers, or "engage in particular disciplinary action."  *Id.* at 648.  Rather, a school "must merely respond . . . in a manner that is not clearly unreasonable."  *Id.* at 649.  Absent an unreasonable

---

[14] *Brown*, 23 F.4th at 1179 (emphasis and alterations in original).
[15] *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1108 (9th Cir. 2020) (alteration in original, citations omitted, emphasis added).
[16] *Karasek*, 956 F.3d at 1107.

1    response, the courts are not to "second-guess[] the disciplinary

2    decisions made by school administrators." *Id*. at 648.

3        3.    Under an ***erroneous outcome*** theory, a school can be liable if the

4              "outcome[] of the disciplinary proceeding[ was] flawed due to the

5              student[]'s sex" --- in other words, sex discrimination was the source

6              of the error.[17]

7        All three theories fall under the single umbrella of "intentional

8    discrimination."  The Ninth Circuit has stated that all such theories "at bottom, . . .

9    ask the same question:  whether 'the alleged facts, if true, raise a plausible inference

10   that the university discriminated [against the plaintiff] 'on the basis of sex'?"

11   *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 947 (9th Cir. 2020) (quoting *Doe v.*

12   *Columbia Coll. Chi.*, 933 F.3d 849, 854-55 (7th Cir. 2019)).[18]

13       **Summary Judgment.**  Summary judgment is appropriate where the

14   pleadings, depositions, answers to interrogatories, and admissions on file, together

15   with the affidavits, if any, show "that there is no genuine dispute as to any material

16   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

17   P. 56(a).  There is no genuine issue of fact "[w]here the record taken as a whole

18   could not lead a rational trier of fact to find for the non-moving party."  *Matsushita*

19   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

20   **IV.   MS. WHITTIER'S FIRST CAUSE OF ACTION ("TITLE IX – PRE-**
21   **ASSAULT") FAILS AS A MATTER OF LAW**

22       To maintain a Title IX claim under a pre-assault theory, Ms. Whittier must

23   show:

24       "(1) [the] school maintained a policy of deliberate indifference to
25       reports of sexual misconduct, (2) which created a heightened risk of

26   ───────────────
[17] *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).

27   [18] Ms. Whittier pled a fourth theory of Title IX liability, which she named
     "intentional discrimination."  There is no separate theory by that name.  Any
     Title IX claim is, at its core, a claim of intentional discrimination based on sex.

28   *Schwake*, 967 F.3d at 946.

sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was 'so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.'"

*Karasek*, 956 F.3d at 1112 (citation and alterations omitted).

USC strongly contests the first element of this claim (deliberate indifference as a pre-assault "policy"), but that is for trial (if one occurs). For purposes of this motion, it is important to focus on Ms. Whittier's inability to establish two other necessary elements for this claim --- causation and University control--- based on her own deposition testimony.

**A.** 

There must be "a causal link between a plaintiff's harassment and a school's deliberate indifference to sexual misconduct[]." *Karasek*, 956 F.3d at 1114. The "element of causation ensures that Title IX liability remains within proper bounds." *Id*. That means Ms. Whittier must show that USC's supposed indifference to reports of sexual misconduct created a heightened risk that *she would be sexually assaulted by John Doe*, and the risk of that assault was known or obvious to USC. She cannot.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25       On this record, it is clear that Ms. Whittier cannot show the important "causal

26 link between [her] harassment and [USC]'s deliberate indifference to sexual

27 misconduct" that "ensures that Title IX liability remains within proper bounds."

28 *Karasek* 956 F.3d at 1114.  Her theory of liability would mean that USC could be

institutionally liable for any and all incidents of student-on-student misconduct occurring after ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████ [19]   That is tantamount to saying USC will be liable under Title IX unless it finds a way to "purge its school" of *all* harassment and *all* harassers.  Such a theory for maintaining a Title IX claim has been rejected by the courts for years.  *Doe v. Cal. Inst. of Tech.*, No. 2:19-cv-01005-AB (KSx), 2020 WL 3978081, at *3 (C.D. Cal. May 12, 2020) (citing *Davis*, 526 U.S. at 648) (declining to find liability under Title IX where plaintiff asserted that the university knew of prior rapes in residence halls generally).

████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ [20].)  *See Doe v. Univ. of the Pac.*, No. CIV. S-09-764 FCD/KJN, 2010 WL 5135360, at *13-14 (E.D. Cal. Dec. 8, 2010) (declining to find a university liable for violations of Title IX where the university had no prior knowledge that the individual was a threat, and finding that allegations that the alleged perpetrator had a reputation as a "womanizer" prior to the assault was substantively different from being a sexual predator), *aff'd*, 467 F. App'x 685 (9th Cir. 2012).

---

[19] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

[20] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

**B.**   **Ms. Whittier Cannot Establish That The University Controlled The Location Of Her Alleged Assault.**

For Ms. Whittier's claim to survive summary judgment, she must be able to show that USC exercised "*substantial* control over *both* the harasser and the context in which the known harassment occurred." *Karasek*, 956 F.3d at 1105 (quoting *Davis*, 526 U.S. at 645) (emphasis added).

A recent Ninth Circuit decision --- *Brown*, 23 F.4th at 1179-80 --- makes clear that universities do not have sufficient control over misconduct occurring in off-campus apartments to trigger Title IX liability.  In that case, the district court granted summary judgment for a university because the alleged sexual assault occurred in a private off-campus apartment that the university did not control.  The Ninth Circuit affirmed, observed:

> "Bradford abused Brown in a private, off-campus residence unconnected to any school activity.  Even though the abuse may not have occurred absent Bradford and Brown's shared connection to the University, not everything that happens between fellow students occurs "under [the operations of]" the institution. . . .  It would be unreasonable to conclude that Title IX gives educational institutions adequate notice that accepting federal education funds imposes on them liability for what happens between students off campus, unconnected to any school event or activity."

*Brown*, 23 F.4th at 1180 (internal citations omitted, alterations in original).

So, too, here. ███████████████████████████████████

████████████████████████████████████████████████████████████████

**V.**   **MS. WHITTIER'S SECOND CAUSE OF ACTION ("TITLE IX – POST-ASSAULT") FAILS AS A MATTER OF LAW**

As an initial matter, Ms. Whittier's post-assault theory fails because the alleged assault happened in Mr. Doe's off-campus apartment --- the same control requirement applies to this theory as well.  *Karasek*, 956 F.3d at 1105.

Moreover, to survive summary judgment on her post-assault Title IX claim, Ms. Whittier must show that USC acted with "deliberate indifference" to her

assault, such that its "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." *Karasek*, 956 F.3d at 1105 (quoting *Davis*, 526 U.S. at 648.  And she must show that USC's inadequate response caused her to be subjected to (or vulnerable to) further assault or harassment. *See Davis*, 526 U.S. at 630 ("[An institution] may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment, *i.e.*, at a minimum, causes students to undergo harassment or makes them liable or vulnerable to it.") (internal citation omitted)).  She cannot show either one; indeed, the evidence shows the opposite.

### A.   USC's Response Was More Than Reasonable – It Followed Its Policies And Provided A Prompt, Fair, And Robust Review Of Ms. Whittier's Claims.

Ms. Whittier alleges that USC acted with "deliberate indifference in response to [her] report by failing to respond reasonably to [her] report." (Compl. ¶ 64.) Specifically, she claims that USC (1) "intentionally deviated from its own policies in order to provide [Mr. Doe] with an unfair advantage during its investigation," and (2) "predetermin[ed] the outcome of [her] complaint in favor of [Mr. Doe] prior to the conclusion of the investigation." (*Id*.)  Neither is true.

In deposition, Ms. Whittier admitted:



On this record, there is simply no support for arguing (let alone finding) that USC's response was "clearly unreasonable," as the law requires.  *See*, Section III, *supra*.

### B.   Ms. Whittier Was Not Subjected To, Or Vulnerable To, Further Assault Or Harassment After Her Complaint.

Ms. Whittier cannot show that USC demonstrated "deliberate indifference" at

---

[21]

(*See* Section II(E).)  The Title IX Office's decision on this issue does not provide any basis for Title IX liability.  *See Mosavi v. Mt. San Antonio Coll.*, No. CV 15-4147-MWF (AFMx), 2018 WL 5911764, at *9-10 (C.D. Cal. May 10, 2018), *aff'd*, 805 F. App'x 502 (9th Cir. 2020) (finding the investigation may "have been more complete" if the school interviewed the plaintiff's suggested witnesses, but there was no evidence the decision not to do so was "clearly unreasonable").

all, let alone indifference that caused her to undergo, or made her vulnerable to, further sexual harassment. *See Davis,* 526 U.S. at 630 ("If [an institution] does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment, *i.e.*, at a minimum, causes students to undergo harassment or makes them liable or vulnerable to it." (internal citation omitted)). Courts have concluded that "a plaintiff who has withdrawn from an educational institution or opportunities offered by the institution due to a reasonable concern of encountering his or her harasser or assaulter can adequately allege the fifth element when the educational institution has failed to take adequate steps to protect the plaintiff." *See Barnett v. Kapla*, No. 20-CV-03748-JCS, 2020 WL 7428321, at *14 (N.D. Cal. Dec. 18, 2020).

Ms. Whittier has no basis to contend that USC's handling of her report resulted in any loss of opportunities. ███████████████████████████████████

### C. **Ms. Whittier Failed To Exhaust Judicial Remedies Necessary For This Claim By Failing To File A Petition For Administrative Mandamus.**

Ms. Whittier's post-assault theory also fails because of her failure to challenge USC's decision through administrative mandamus. Several courts have dismissed Title IX and analogous claims for this reason. (*See* footnote 22, *infra*.) The Ninth Circuit specifically addressed the issue in *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147 (9th Cir. 2018), where a Title IX claim challenging a disciplinary proceeding at UC Santa Barbara was dismissed because the plaintiff never filed a petition for a writ of administrative mandamus under California Code

of Civil Procedure Section 1094.5.  The plaintiff had not exhausted judicial

remedies, and UCSB's decision was therefore binding.  The Ninth Circuit

explained:

> We also agree with The Regents that Doe's . . . Title IX claim[] [is]
> precluded because he has failed to exhaust judicial remedies by filing a
> § 1094.5 writ petition in state court.  Under federal common law,
> federal courts accord preclusive effect to state administrative
> proceedings that meet the fairness requirements of *United States v.
> Utah Construction & Mining Co.,* 384 U.S. 394, 86 S. Ct. 1545, 16
> L.Ed.2d 642 (1966). . . .
>
> Because California has adopted the *Utah Construction* standard, we
> give preclusive effect to a state administrative decision if the California
> courts would do so. . . .   In California, "[e]xhaustion of judicial
> remedies . . . is necessary to avoid giving binding 'effect to [an]
> administrative agency's decision[.]'"  *Johnson v. City of Loma Linda*,
> 24 Cal.4th 61, . . . (2000) (emphasis omitted).  A party must exhaust
> judicial remedies by filing a § 1094.5 petition, the exclusive and
> "established process for judicial review" of an agency decision. *Id.* . . .
> UCSB's suspension of Doe is the sort of "adjudicatory, quasi-judicial
> decision" that is subject to the judicial exhaustion requirement. . . .
>
> It is undisputed that Doe has not filed a § 1094.5 petition in state
> court.  . . .  Therefore, Doe has not exhausted his judicial remedies.
> Because the California courts would thus accord preclusive effect to
> UCSB's administrative decision, we must do the same.  The district
> court should have dismissed without prejudice Doe's . . . Title IX
> claim[].

*Id.* at 1154-55 (some internal citations omitted).[22]

So, too, here.  Ms. Whittier did not exhaust her judicial remedies under

---

[22] *Doe v. Cal. Inst. of Tech*, No. 2:18-cv-09178-SVW-JEM, 2019 WL 4238888, at
*3-4, and *4 n.2 (CD. Cal. Apr. 30, 2019) (analyzing exhaustion of judicial
remedies where student had not filed petition for writ of mandamus under
Section 1094.5; observing that "*Doe* [*v. Regents*] necessitates that Plaintiff's § 1983
claim must first satisfy the judicial exhaustion requirements of § 1094.5 because the
claim 'involves the substance of the hearing' held by the administrative agency;"
and allowing Section 1094.5 claim to be added to the complaint); *Doe v. Cal. Inst.
of Tech.*, No. 2:19-CV-01005-AB (KSX), 2019 WL 8645652, at *6-7 (C.D. Cal.
Aug. 13, 2019) (granting Institute's motion to dismiss Title IX claims for failure to
exhaust judicial remedies via a Section 1094.5 claim); *Gutkin v. Univ. of S. Cal.*,
101 Cal. App. 4th 967 (2002) (dismissing civil claims in light of failure to file
administrative mandamus petition); *Gupta v. Stanford Univ.*, 124 Cal. App. 4th 407
(2004) (same).

1  Section 1094.5.  Her post-assault theory (challenging USC's disciplinary

2  proceedings) attacks the procedure and results of USC's disciplinary process.

3  Filing a writ petition for administrative mandamus was required.  *Gupta*, 124 Cal.

4  App. 4th at 411 (requiring plaintiff to file an administrative writ where "the

5  gravamen of [the plaintiff's] claims [wa]s confined to the disciplinary process and

6  the proceedings against him").

7  **VI.   MS. WHITTIER'S THIRD CAUSE OF ACTION ("TITLE IX –
8  ERRONEOUS OUTCOME") FAILS AS A MATTER OF LAW**

9  To prevail on an erroneous outcome claim, a plaintiff must establish:

10  "(1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome

11  of the disciplinary proceeding' and (2) a 'particularized . . . causal connection

12  between the flawed outcome and gender bias.'"  *See Doe v. Miami Univ.*, 882 F.3d

13  579, 592 (6th Cir. 2018) (citation omitted, alteration in original); *see also, Austin*,

14  925 F.3d at 1138 (same).  Ms. Whittier cannot establish either.

15  **A.   Ms. Whittier Cannot Show That The Outcome Of The Proceeding
16  Was Erroneous.**

17  Ms. Whittier cannot legitimately cast "articulable doubt on the accuracy" of

18  the outcome of her Title IX investigation.  *See Doe v. Miami Univ.*, 882 F.3d at 592

19  (citation omitted).

25  The Title IX Office's conclusion is amply supported by the record.



**B.  Ms. Whittier Failed To Exhaust Judicial Remedies By Failing To File A Petition For Administrative Mandamus.**

Ms. Whittier's erroneous outcome claim also fails because of her failure to challenge USC's decision through administrative mandamus.  Just like her post-assault theory (challenging USC's disciplinary proceedings), her erroneous outcome theory (challenging the decision) attacks the substance and procedure of USC's disciplinary process.  A writ petition was required.  (*See* Section V(C), *supra*.)

**C.  Ms. Whittier Cannot Show The Outcome Of USC's Investigation Was Incorrect *Because Of Her Gender*.**

There is no evidence that the "outcome of the . . . [Title IX] proceeding w[as] flawed due to [Ms. Whittier's] sex."  *Austin*, 925 F.3d at 1138 (finding an erroneous outcome theory fails where there is no "basis to discern that the administration or outcomes of the disciplinary proceedings were flawed due to the student athletes' sex.")

Ms. Whittier's claim that "often times [USC] predetermined outcomes of Title IX investigations" (Compl. ¶ 53) fared no better in deposition.

Without evidence that the outcome of the investigation was motivated by sex

discrimination, Ms. Whittier's erroneous outcome claim fails. *Doe 1 v. Manhattan Beach Unified Sch. Dist.*, No. 19-cv-6962 DDP (RAOx), 2021 WL 3883910, at *6 (C.D. Cal. Aug. 31, 2021), *appeal dismissed*, 2021 WL 7366517 (9th Cir. Dec. 10, 2021) (granting summary judgment in favor of defendant where plaintiff failed to "put forth evidence to demonstrate that the School District's course of action . . . was motivated by gender discrimination").

### D. An Erroneous Outcome Claim Is Not Available To Ms. Whittier (Given Her Role As An Alleged *Victim*).

Even if Ms. Whittier's erroneous outcome claim had merit (it does not), as an alleged victim, she cannot bring this type of claim anyway. The very basis of an erroneous outcome claim is that "the plaintiff contends that [he/she] is 'innocent and [was] wrongly found to have committed the offense.'" *Doe v. Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799, 822 (E.D. Pa. 2017) (alteration in original) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).[23] That is not this case. █████████████████████████████████████████████████ █████████████████████████████████████████████ As an alleged victim, the appropriate claim is one for deliberate indifference (see above) --- not a claim for erroneous outcome. *See Borkowski v. Baltimore Cnty.*, 492 F. Supp. 3d 454, 489 (D. Md. 2020) ("deliberate indifference claims exist as a remedy for the victim to charge that the university's 'response to known discrimination [wa]s clearly

---

[23] *See*, *e.g.*, *Doe v. Cummins*, 662 F. App'x 437 (6th Cir. 2016); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Yusuf*, 35 F.3d at 715; *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125 (N.D.N.Y. 2018); *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573 (E.D. Va. 2018); *Powell v. Saint Joseph's Univ.*, No. 17-4438, 2018 WL 994478 (E.D. Pa. Feb. 20, 2018); *Doe v. Trustees of the Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Pa. 2017); *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048 (S.D. Ohio 2017); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748 (D. Md. 2015); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Doe v. Univ. of Mass.-Amherst*, No. 14-30143-MGM, 2015 WL 4306521 (D. Mass. July 14, 2015); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774 (S.D. Ohio 2015); *Wells v. Xavier Univ.*, 7 F. Supp. 3d 746 (S.D. Ohio 2014).

unreasonable in light of the known circumstances' . . .   In [this regard], ***Title IX erroneous outcome claims and Title IX deliberate indifference claims are mutually exclusive***") (citation omitted, emphasis added);  *Roe v. Pa. State Univ.*, No. 18-2142, 2019 WL 652527, at *10 (E.D. Pa. Feb. 15, 2019) ("[W]e question whether an erroneous outcome claim is even available to a plaintiff such as Roe").

## VII.  MS. WHITTIER'S FOURTH CAUSE OF ACTION ("TITLE IX – INTENTIONAL DISCRIMINATION") IS NOT A SEPARATE CLAIM, AND IT IS DUPLICATIVE OF HER OTHER CLAIMS ANYWAY

Ms. Whittier's fourth cause of action fails for two reasons.  ***First***, there is no independent Title IX claim for "intentional discrimination."  It is well-settled that Title IX "encompasses diverse forms of intentional sex discrimination" including pre-assault and post-assault claims.  *Schwake*, 967 F.3d at 946-47 (citation omitted).  ***Second***, even if "intentional discrimination" were an independent clam, it would fail anyway because it is based entirely on the same (doomed) allegations and evidence that support her post-assault claim.  *Compare* Compl. ¶ 64 (alleging USC is liable under a post-assault theory because it "fail[ed] to respond reasonably to Plaintiff's report [of sexual assault]"), *with* Compl. ¶ 67 (alleging USC is liable under a theory of intentional discrimination because of "the manner in which it responded to Plaintiff's complaint of sexual assault").  Given the duplicative nature of her fourth cause of action, it should be dismissed.  *See Paternostro v. City of Lodi*, No. 2:17-cv-02062-TLN-KJN, 2021 WL 1985438, at *4 (E.D. Cal. May 18, 2021) (granting summary judgment where a claim was duplicative of another claim subject to dismissal via summary judgment); *Griggs v. Teichert Const., Inc.*, No. 2:07-CV-01117 JAM-KJM, 2008 WL 5099620, at *2 (E.D. Cal. Dec. 1, 2008) ("summary judgment is granted because this cause of action is duplicative" of a prior failed claim).

## VIII.  CONCLUSION

For these reasons, USC respectfully requests that the Court grant summary

judgment on Whittier's complaint, and dismiss the case.  In the alternative, USC requests that the Court grant partial summary judgment as to those claims the Court deems appropriate for dismissal at this stage.


DATED:  April 25, 2022          PAUL HASTINGS LLP
                                CAMERON W. FOX
                                JESSICA MENDELSON


                                By: _____/s/ Cameron W. Fox_____
                                        CAMERON W. FOX

                                Attorneys for Defendant
                                UNIVERSITY OF SOUTHERN CALIFORNIA