# EXHIBIT A

CONFIDENTIAL

```
 1               UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3

 4   COURTNEY WHITTIER, an     ) Case No.

 5   individual,              ) 2:20-cv-09539 DSF RAOx

 6               Plaintiff,    )

 7        vs.                  )

 8   UNIVERSITY OF SOUTHERN    )

 9   CALIFORNIA, a California  )

10   corporation; and DOES 1-20,)

11   inclusive,                )

12               Defendant.    )

13   --------------------------)

14

15        THIS TRANSCRIPT IS DEEMED CONFIDENTIAL

16    VIRTUAL VIDEOCONFERENCE VIDEOTAPED DEPOSITION OF

17                 COURTNEY WHITTIER

18              FRIDAY, MARCH 12, 2021

19                    11:09 A.M.

20

21   JOB NO. 4430252

22   REPORTED BY:

23        SUSAN NELSON

24        C.S.R. No. 3202

25   PAGES 1 - 327
```

Page 1







EXHIBIT A
PAGE 9









**EXHIBIT A**
**PAGE 16**











EXHIBIT A
PAGE 40



























**EXHIBIT A**
**PAGE 58**



























































































EXHIBIT A
PAGE 111



















# Exhibit 3

EXHIBIT A
PAGE 123

# Exhibit 4

**EXHIBIT A**
**PAGE 124**

EXHIBIT A
PAGE 126

# Exhibit 5



EXHIBIT A
PAGE 129



# Exhibit 6

# Exhibit 7

# Exhibit 8

**EXHIBIT A**
**PAGE 139**

EXHIBIT A
PAGE 140



**EXHIBIT A**
**PAGE 144**

# Exhibit 9

EXHIBIT A
PAGE 146

# Exhibit 10

EXHIBIT A
PAGE 150

**EXHIBIT A**
**PAGE 151**

# Exhibit 11

# Exhibit 12



# Exhibit 15

**EXHIBIT A**
**PAGE 159**







EXHIBIT A
PAGE 162





EXHIBIT A
PAGE 164



**EXHIBIT A**
**PAGE 166**







# Exhibit 17

# Exhibit 18

# Exhibit 19

EXHIBIT A
PAGE 174

EXHIBIT A
PAGE 175



EXHIBIT A
PAGE 178

# Exhibit 21

EXHIBIT A
PAGE 179



# Exhibit 22



EXHIBIT A
PAGE 182



EXHIBIT A
PAGE 184

EXHIBIT A
PAGE 186

**EXHIBIT A**
**PAGE 187**

# Exhibit 31







EXHIBIT A
PAGE 196





# Exhibit 43



duct at issue in th

**EXHIBIT A**
**PAGE 204**





EXHIBIT A
PAGE 209



EXHIBIT A
PAGE 213

EXHIBIT A
PAGE 214



mail occurred on

**EXHIBIT A**
**PAGE 215**





EXHIBIT A
PAGE 216





































EXHIBIT A
PAGE 250





















**EXHIBIT A**
**PAGE 261**









EXHIBIT A
PAGE 265





**EXHIBIT A**
**PAGE 267**













**EXHIBIT A**
**PAGE 281**



EXHIBIT A
PAGE 284







**EXHIBIT A**
**PAGE 294**





**EXHIBIT A**
**PAGE 297**

















**EXHIBIT A
PAGE 306**











**EXHIBIT A**
**PAGE 312**





























EXHIBIT A
PAGE 328





EXHIBIT A
PAGE 331











EXHIBIT A
PAGE 336



**EXHIBIT A**
**PAGE 337**



EXHIBIT A
PAGE 340







**EXHIBIT A**
**PAGE 344**









**EXHIBIT A**
**PAGE 349**







EXHIBIT A
PAGE 352









**EXHIBIT A**
**PAGE 357**



EXHIBIT A
PAGE 358

































EXHIBIT A
PAGE 385















EXHIBIT A
PAGE 394





















**EXHIBIT A**
**PAGE 409**





# Exhibit 44

**Exhibit 0044**

Policy

search

**POLICY UPDATES**

Submit or revise a policy
New and revised policies

**RELATED WEBSITES**

Employee Gateway

August 21, 2017

# Student Misconduct – Sexual, Interpersonal and Protected Class Misconduct

## I. Policy Statement

The University of Southern California believes that all members of the university community – students, faculty, staff, and visitors – should pursue their work and education in a safe environment, free from harassment based on protected characteristics, sexual misconduct, and interpersonal violence. The university is committed to stopping prohibited conduct, preventing its recurrence, addressing its effects, and eliminating hostile environments. Our goal is a safe and transparent university community where these behaviors are universally recognized as intolerable, where those who are harmed are provided support, and where a fair and impartial process is provided to all parties. The university's response to prohibited conduct is grounded in the fair application of policy and procedure.

The university prohibits discrimination or harassment based on the following *protected characteristics*: race, color, national origin, ancestry, religion, sex, gender, gender identity, gender expression, sexual orientation, age, physical disability, medical condition, mental disability, marital status, pregnancy, veteran status, genetic information, and any other characteristic which may be specified in applicable laws and governmental regulations. The university also prohibits sexual assault, non-consensual sexual contact, sexual misconduct, intimate partner violence, stalking, malicious dissuasion, retaliation, and violation of interim measures. Collectively, these behaviors are referred to as *prohibited conduct*.

The university is firmly committed to complying with all applicable laws and governmental regulations. This commitment applies to all educational programs and activities, including admissions, financial aid, and university programs. The university seeks compliance with all statutes prohibiting discrimination in education, including Title VI and Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, the Age Discrimination in Employment Act of 1967, the Jeanne Clery Disclosure of Campus Security Act (as amended by the Violence Against Women Reauthorization Act of 2013), the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendment Act of 2008. This good-faith effort to comply is made even when such laws and regulations conflict with each other. Further, in compliance with Section 504, the university provides reasonable accommodations for students and applicants with disabilities.

## II. To Whom Policy and Procedures Apply

This policy applies to conduct committed by a university *student*, a *participant* in any *university-related program or activity, and student organizations*.

A *student* is defined as an individual who (a) is *currently enrolled* in university classes or in one of the university's degree or non-degree programs; (b) has completed the immediately preceding semester and/or is enrolled for the next scheduled semester; (c) is officially representing the university during a period between regular academic semesters; (d) is not currently enrolled but has a continuing relationship with the university.

A *student organization* is defined as one which (a) has satisfied the administrative procedures for recognition or (b) is functioning within the university community in the capacity of a student organization.

The university has *jurisdiction* over a *student* or *student organization* when the prohibited conduct occurs (a) on university property; (b) in the context of any university activity; (c) or outside the context of university activities but which may have the effect of posing a serious threat to the university community or creating a hostile environment for any members of the university community.

For the purposes of this policy, the individual who is reported to have experienced prohibited conduct is referred to as the *Reporting Party*. The *Respondent* is the individual who is reported to have committed the prohibited conduct.

## III. Other Potentially Relevant Policies and Procedures

### A. If the Respondent is a staff employee

The policy and procedures for responding to reports of prohibited conduct committed by university staff employees, including postdoctoral candidates, are described at http://policy.usc.edu/. The procedures set forth in this document do not apply to staff employees.

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

### B. If the Respondent is both a student and a staff employee

If the Respondent is a student and a staff employee, the university's *Title IX Coordinator* will determine which of the policy and procedures apply based upon the facts and circumstances: the context of the prohibited conduct, the roles of the parties at the time of the conduct, the location of the incident. If it is determined the Respondent is a staff employee, the policy and procedures for response are found at http://policy.usc.edu/. If it is determined the Respondent is a student, this policy and procedure govern response.

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

## C.  If the Respondent is faculty

If the Respondent is a faculty member, the university's *Title IX Coordinator*, who also serves as the *Executive Director of the Office of Equity and Diversity*, will coordinate the investigation and follow the policy and procedures set forth in the university's Faculty Handbook at http://policy.usc.edu/faculty/faculty-handbook. The procedures set forth in this document do not apply to faculty.

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

## D.  If the prohibited conduct is committed by a recognized student organization

Recognized student organizations are registered with the Campus Activities Office in Student Affairs.  The university has jurisdiction over recognized student organizations and may address prohibited conduct committed by and in relation to those organizations.

Policies and honor codes promulgated by individual schools and colleges that govern university- affiliated student organizations may also address prohibited conduct committed by student organizations, but are not intended to serve in place of the procedures set forth in this policy. The *Title IX Coordinator* must be informed of any report of prohibited conduct within a student organization and coordinate the investigation and response.

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

## E.  If the Respondent is a third-party

A third-party is an individual who is not a university student or staff employee or participant in any university-related program or activity; for example, visitors and guests. If the Respondent is a third-party, the university's ability to take action may be limited and is determined by the context of the prohibited conduct and the nature of the relationship of the third-party to the university. The *Title IX Coordinator* will determine the appropriate manner of resolution which may include referral to area law enforcement, restriction from access to campus or university activities, or to the *Title IX Coordinator* of the home school of the third-party.

The university will offer resources and assistance to all community members who experience and/or are affected by prohibited conduct. In instances when this policy does not apply, the university will assist in identifying and contacting external law enforcement agencies and appropriate campus or community resources.

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

CONFIDENTIAL

**EXHIBIT A
PAGE 418**

CW 001154

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

# IV.  Private and Confidential Resources

The university distinguishes between *seeking assistance* from a private or confidential resource and *making a report* of prohibited conduct to the university or law enforcement (see section V for reporting options). The university also distinguishes between *privacy* and *confidentiality*.

*Privacy* in this context means that information related to a disclosure or report of prohibited conduct will generally be shared *only* with those university employees who need to know the information in order to review, investigate, or resolve the report.

*Confidentiality* means that information shared *will not* be disclosed without the individual's permission or as required by law. Disclosure may be legally required if the reported conduct poses a threat of serious harm to the Reporting Party or others, or if the reported conduct involves suspected abuse or neglect of a minor.

## A.  Supportive and protective interim measures

Supportive and protective measures (collectively referred to as interim measures) are those accommodations, services, and other assistance the university puts in place after receiving notice of prohibited conduct, but prior to an outcome being determined. The university will implement reasonable interim measures to facilitate an individual's continued access to educational programs, activities, and/or employment and will keep these measures private to the extent possible.

*Supportive measures* are available to the Reporting Party, the Respondent, witnesses, or other members of the university community. Supportive measures are available regardless of whether a report has been submitted to the university or law enforcement, whether the university investigates a report that has been made, or whether the individual participates in an investigation. Supportive measures are designed to address the safety and well-being of an individual and to afford them continued access to university educational and academic opportunities. Examples of supportive measures include access to counseling and medical services, academic support and accommodations, housing accommodations and relocation, a campus escort, and avoidance of contact directives. Supportive measures are voluntary and may be requested, modified, or discontinued at any time.

*Protective measures* are actions taken by the university after a report of prohibited conduct but prior to an investigative decision. The university will implement protective measures against a Respondent based on the totality of facts known at the time. Protective measures are designed to protect a Reporting Party, witness, or the university community from additional or on going prohibited conduct. Examples of protective measures include schedule modifications separating a Respondent from the Reporting Party, changing a Respondent's housing accommodations, limiting a Respondent's access to campus or university events, and/or interim suspension of a Respondent.

Interim measures do not indicate the university has made a decision about the report of prohibited conduct. These measures may be modified at any time and may be kept in place after a final investigative decision is reached.

Individuals seeking an interim measure or who are concerned about the adequacy of an interim measure are encouraged to contact the *Title IX Coordinator*. Supportive measures may also be sought through Student Support and Advocacy (SSA), Relationship and Sexual Violence Prevention and Services (RSVP), and the Department of Public Safety (DPS).

Failure to comply with interim measures may result in a separate policy violation. Individuals wishing to report a violation of an interim measure should notify the *Title IX Coordinator* and call the DPS emergency line (University Park Campus 213-740-4321/Health Sciences Campus 323-442-1000) or dial 911 if there is an immediate safety concern.

See sections VII (Status of a Respondent) and VIII (Receipt and Outreach, Intake) below for more information about interim measures.

## B.  Confidential university resources

Information shared with campus or community professionals who have legal confidentiality (such as licensed counselors, therapists, and physicians) will only be disclosed with the express written permission of the individual seeking services or as provided by law (where there is a continuing threat of serious harm to the individual or others; where there is suspected abuse or neglect of a minor; or where disclosure to a third party is otherwise legally required).

*Confidential university resources* available to students include Relationship and Sexual Violence Prevention and Services (RSVP), Student Counseling Services (SCS) and medical physicians at Engemann Student Health Center and Eric Cohen Student Health Center, and religious officials acting in that capacity when the disclosure is made.

RSVP provides direct support to Reporting Parties, including crisis appointments, group therapy, discussions of reporting options, and support surrounding academic accommodations. SCS provides direct support to both Reporting Parties and Respondents.

EXHIBIT A
PAGE 419

CW 001155

## C. Private university resources

Private resources will make every effort to keep information shared as private as possible, but they cannot keep it confidential. With the exception of the confidential resources defined above, *all university employees designated as Responsible Employees* must notify the *Title IX Coordinator* when they learn of prohibited conduct (see Section V for more information about Responsible Employees).

Private university resources include the *Title IX Coordinator,* Student Support and Advocacy (SSA), and the Department of Public Safety.

Student Support and Advocacy provides direct support to Reporting Parties, Respondents, or other students who are involved in reports of prohibited conduct. This support includes: avoidance of contact directives; help with academic accommodations; help with taking a leave of absence from the university; and connecting to other available support services and resources.

See http://sarc.usc.edu/ for a full list of campus resources and tips for reporting parties and Respondents.

# V. Reporting Options

Prohibited conduct may be reported to local law enforcement (LAPD), the USC Department of Public Safety (DPS), or the *Title IX Office*. Any individual may report prohibited conduct. Support and resources are available to a Reporting Party regardless of the chosen reporting option.

The university strongly encourages prompt reporting of prohibited conduct. Prompt reporting allows for the collection and preservation of evidence, including physical evidence, digital media, and witness statements. The ability to effectively investigate and respond may be limited by delay.

Reports of prohibited conduct to the university will be documented in compliance with the Clery Act, a federal law requiring data collection of crime within the campus geography. Personal information is NOT documented, only type of conduct, and the time, date, and location. This data collection is an important tool for keeping our community safe.

## Contact information

**The Title IX Coordinator may be contacted by:**

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu (general Title IX email)

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower Street, 2nd Floor
Los Angeles, CA 90089-0704

**USC DPS may be contacted by phone at:**

**Non-emergency**

(213) 740-6000

**Emergency**

(213) 740-4321

DPS may also be contacted as otherwise provided at https://dps.usc.edu.

## A. Reporting to law enforcement and DPS

The university encourages anyone who witnesses or experiences prohibited conduct to make a report to university and/or local law enforcement.

To report prohibited conduct, individuals may contact DPS. When prohibited conduct is reported to DPS, DPS immediately notifies:

- The Los Angeles Police Department (LAPD). The Reporting Party can request that their name not be provided to LAPD, and DPS will honor that reque LAPD (or the appropriate law enforcement agency if outside of the Los Angeles area) has the responsibility for the investigation of this conduct. DPS does not have investigative jurisdiction over prohibited conduct.

CONFIDENTIAL

CW 001156

EXHIBIT A
PAGE 420

- The *Title IX Coordinator*. The *Title IX Office* will provide outreach to the impacted student/staff/faculty to provide resources and reporting options.

- RSVP, which will provide outreach to the impacted student to provide support and resources.

An individual who wishes to pursue criminal action in addition to, or instead of, making a report to the university may contact law enforcement directly by calling:

- 911 (for emergencies)

- The Los Angeles Police Department at 877-ASK-LAPD

DPS, the *Title IX Office*, or RSVP will assist any individual in reporting to law enforcement regardless of where the prohibited conduct occurred.

An individual has the right to report, or to decline to report, prohibited conduct to law enforcement. A report to law enforcement may instigate criminal investigation and adjudication within the criminal justice system. Sanctions in the criminal justice system are separate and distinct from university administrative sanctions and may involve probation/parole or incarceration.

## B. Reporting to Title IX

The university also encourages individuals to report prohibited conduct to the *Title IX Office*. Individuals can report to the university *Title IX Coordinator* in the *Office of Equity and Diversity* through any of these options:

- Contact the *Title IX Coordinator* in person, by email, or by phone: Gretchen Dahlinger Means

  (213) 740-5086

  titleix@usc.edu (general Title IX email) USC Credit Union Building

  3720 South Flower Street, 2nd Floor

  Los Angeles, CA 90089-0704

Individuals can receive assistance reporting to *Title IX* from RSVP, Student Support and Advocacy, Residential Education, DPS, and the Engemann Student Counseling Center.

Individuals have the opportunity to decide whether or not they want to pursue a formal Title IX investigation. An individual may meet with a Title IX Investigator, provide an initial statement, and request that the *Title IX Office* not investigate the incident until a later date. Under most circumstances, the *Title IX Office* can honor the request of the Reposting Party.

In limited circumstances, the *Title IX Office* may be required to investigate an incident of sexual misconduct against the choice of the Reporting Party; for example, when an incident involves a weapon or predatory drug use, when multiple victims are involved, or when there is a danger to the community.

Reporting prohibited conduct to Title IX typically initiates an investigation to determine whether the alleged incident is a violation of this policy. The report also allows the university to provide a wide variety of support and resources to impacted individuals and to prevent the reoccurrence of the conduct.

The Title IX process can run simultaneously to a criminal process. If there are parallel investigations, the *Title IX Office* coordinates with external law enforcement to ensure that the Title IX process does not hinder legal process or proceedings.

Title IX sanctions are administrative and may include expulsion, suspension, community reparation, or counseling.

### 1. Reports by individuals who want to remain anonymous

An individual may anonymously report prohibited conduct to the university by calling the *Title IX Coordinator* or the *Title IX Office*. Personally identifiable information will not be required for report. Depending on the amount of information available about the incident and/or the individuals involved, the university's ability to respond to an anonymous report may be limited.

The university will attempt to take appropriate steps to protect the safety of the university community based on the information reasonably available.

Anonymous reports to the university can also be made using the Trojans Care 4 Trojans (TC4T) electronic reporting form. TC4T is an anonymous reporting system that allows any individual to complete an online report regarding a student of concern. Once submitted, the report is automatically sent to Student Support and Advocacy for response and intervention. Should a report of prohibited conduct be filed, Student Support and Advocacy will route the information to the *Title IX Office*. Information regarding the TC4T report and how to access the online form is available at https://studentaffairs.usc.edu/trojans-care-for- trojans-tc4t/. The TC4T form is not intended to be used as a reporting mechanism for faculty and staff employees who are considered Responsible Employees and mandated to report all potential prohibited conduct to the *Title IX Office*.

CONFIDENTIAL

**EXHIBIT A PAGE 421**

CW 001157

You may contact the Title IX Coordinator by:

**Phone**

(213) 740-5086

**Email**

titleix@usc.edu

**Mail or in person**

USC Office of Equity and Diversity/Title IX
USC Credit Union Building
3720 South Flower St, 2nd Floor
Los Angeles, CA 90089-0704

### 2. Time frame for reporting

The university does not limit the time frame for reporting prohibited conduct. However, to promote timely and effective review, the university strongly encourages individuals to report prohibited conduct as soon possible, as a delay in reporting may impact the ability to collect relevant evidence.

If the Respondent is no longer a student or participant in a university-related program, or the conduct does not fall within the scope of the policy, the university's ability to respond through its administrative process may be limited. The university will, however, help a Reporting Party identify and access external reporting options and provide support and resources.

### 3. Amnesty to students who report prohibited conduct or seek assistance

The university encourages students and organizations to report prohibited conduct and to seek assistance for themselves and others who experience prohibited conduct or who may be at medical risk while under the influence of drugs and/or alcohol.

Individuals who report prohibited conduct, participate as witnesses in these investigations, seek medical assistance for themselves or another by contacting a Residential Assistant, the Department of Public Safety, or calling 911, will not be subject to disciplinary sanctions for personal consumption of alcohol and/or other substances. These students may be directed to appropriate services. Amnesty for alcohol and/or substance consumption in violation of university policy will be granted to both the reporting students and the student in need of assistance.

This policy does not grant amnesty for policy violations other than alcohol and/or substance consumption. Further, this policy does not provide amnesty for alcohol or substance violations of the Respondent.

## C. Reporting to university staff and faculty

### 1. Responsible employees

Faculty, teaching assistants, academic advisors, residential assistants, and staff employees, including student employees who hold supervisory positions, are considered Responsible Employees.

Responsible Employees *must immediately report* all known information about suspected prohibited conduct to the *Title IX Office*. This includes the name of the parties and known details of the conduct. This duty applies no matter how the information is learned; whether from direct report from an affected party, from social media, or from a concerned third party. Failure by a Responsible Employee to make a timely report of prohibited conduct may be subject to discipline, up to and including removal from their position.

This report may be made to the *Title IX Office* via telephone call or email.

Any questions regarding who is a Responsible Employee should be directed to the *Title IX Coordinator* at (213) 740-5086.

### 2. All other staff employees

Reporting is an essential tool to address prohibited conduct and to keep the campus community safe. All employees who are not designated as Responsible Employees or confidential resources (see IV) should safeguard an individual's privacy, but are also strongly encouraged to share any information about such conduct with the *Title IX Coordinator* or the *Title IX Office*.

### 3. Confidential resources

The confidential resources described above in section IV. B. will not share information about an individual or incident without the individual's express written permission unless there is a continuing threat of serious violence or a legal obligation to reveal the information.

EXHIBIT A
PAGE 422

## D. Reporting to governmental authorities

Any individual may file reports and/or complaints about the university's handling of prohibited conduct to the Office for Civil Rights (OCR) with the U.S. Department of Education at (415) 486-5555 or ocr.sanfrancisco@ed.gov. OCR complaints should be filed within 180 days of the last date of alleged discrimination. OCR may extend this deadline in a variety of circumstances.

Staff employees and faculty may file reports and/or complaints with the California Department of Fair Employment and Housing (DFEH) at contact.center@dfeh.ca.gov or www.dfeh.ca.gov, or the United States Equal Employment Opportunity Commission (EEOC) at 1-800-669-4000 (TTY 1 (800) 669-6820) or www.eeoc.gov. Complaints must be filed with the DFEH no later than one year from the date of the alleged unlawful conduct. If the DFEH believes that a complaint is valid and settlement efforts fail, the DFEH may seek an administrative hearing before the California Fair Employment and Housing Commission (FEHC) or file a lawsuit in court. Both the FEHC and the courts have the authority to award monetary and non-monetary relief in meritorious cases.

Any person who believes that the university as a federal contractor has violated nondiscrimination or affirmative action obligations may contact the Office of Federal Contract Compliance Programs (OFCCP) at 1(800)397-6251 (TTY: 1(202)693-1337).

# VI. Prohibited Conduct

Attempts or threats to commit prohibited conduct are equally covered by this policy.

## A. Harassment

No student may commit harassment based on a protected characteristic. Harassment is verbal or physical conduct based on a protected characteristic which:

(a) Creates a hostile environment.

A "hostile environment" exists when such conduct is sufficiently severe, persistent or pervasive that it *unreasonably* (i) interferes with, (ii) limits, or (iii) deprives an individual from participating in or benefitting from the university's education or employment programs, activities, or living environment.

In evaluating whether a hostile environment exists, the totality of known circumstances, including the nature, frequency, intensity, location, context, and duration of the conduct, will be considered from both a subjective and objective perspective; or

(b) Submissions to or rejection of the conduct is explicitly or implicitly (i) made a term or condition of an individual's educational environment, employment, living environment, appointment, admission, or academic evaluation; OR (ii) used as a basis for evaluation in academic evaluations, educational opportunities, admissions evaluations, financial aid, or personnel decisions affecting an individual.

Although repeated incidents generally create a stronger claim of harassment, a serious singular incident can be sufficient. For instance, a single instance of sexual assault or a single disparaging remark about an individual's ethnicity in an email sent to an entire class may constitute harassment.

Examples of conduct that may constitute harassment:

- Ridicule, abuse, insults or derogatory comments that are directly or indirectly based on a protected characteristic;

- Offensive remarks about an individual's looks, clothing, or body parts, that relate to a protected characteristic;

- Offensive comments about an individual's racial, ethnic or religious characteristics;

- Disparaging or offensive remarks about an individual's gender whether or not sexual in nature;

- Disparaging or offensive comments about an individual's religious beliefs or lack of religious beliefs;

- Expressing negative stereotypes regarding an individual's gender, country of birth, ancestry, citizenship, or race;

- Disparaging, intimidating or offensive references to an individual's mental or physical impairment or disability;

- Disparaging racial or ethnic remarks, and racial or ethnic slurs, jokes or epithets;

- Pursuing, following, waiting or showing up uninvited at or near places frequented by the victim;

- Unwelcome touching and physical conduct;

EXHIBIT A
PAGE 423

CW 001159

■ Inappropriate display of sexually explicit objects, pictures, cartoons, posters, computer screen savers, websites, movies, drawings, or sexual gesture

Harassment includes "cyber" conduct that occurs through social media platforms, text or email.

## B.  Sexual assault and non-consensual sexual contact

Sexual assault is penetration, however slight, of the vagina, anus, or mouth by a body part or an object, without consent.

Sexual contact is intentional contact, direct or indirect, without consent (a) of the breasts, genitals, buttocks, or groin of another, (b) of another with any of these body parts; or (c) making another touch you or themselves *with* or *on* any of these body parts without their consent.

Acts by strangers, acquaintances, and intimate partners are covered equally under this policy.

### 1. **Consent**

Consent must be affirmative. "Affirmative consent" means affirmative, conscious, and voluntary agreement to engage in sexual activity. It is positive cooperation in act and attitude made with knowledge and agreement to the nature of the act.

It is the responsibility of each person involved to ensure they have the affirmative consent of the other(s) to engage in sexual activity. Affirmative consent must be ongoing throughout the sexual activity and can be revoked at any time.

Lack of protest or resistance does not mean consent, nor does silence mean consent.

Consent cannot be inferred from an existing or previous dating relationship. Previous sexual activity between the parties cannot, by itself, be assumed to be an indicator of consent. There must be mutual consent to engage in the sexual activity each time it occurs.

Consent to engage in sexual activity at one time is not consent to engage in the same or different sexual activity at a different time. Consent to engage in sexual activity with one person is not consent to engage in sexual activity with another.

### 2. **Coercion or force**

Consent cannot be the product of physical force, threats, or coercion.

Coercion is conduct, including intimidation or express/implied threats of immediate or future physical, emotional, financial or reputational harm to the Reporting Party or another, which would place a reasonable person in fear they will be injured or harmed if they do not submit.

### 3. **Incapacitation due to sleep, unconsciousness, or intoxication**

Consent cannot be the product of incapacitation. A person who is incapacitated is not capable of giving valid, affirmative consent.

Incapacitation means a person cannot understand the fact, nature, or extent of the sexual activity. An incapacitated person lacks the physical and mental capacity to make informed, reasonable judgements about whether or not to engage in sexual activity. A person who is incapacitated may not be able to understand where they are, whom they are with, how they got there, or what is happening.

A person may be incapacitated by a temporary or permanent mental or physical condition, sleep, unconsciousness, or lack of awareness that the sexual act is taking place. Further, a person may be incapacitated as a result of consumption of alcohol or drugs. Incapacitation is a state beyond intoxication or "drunkenness." Impairment must be significant enough to render a person unable to understand the fact, nature, or extent of the sexual activity. Mere consumption of alcohol or drugs does not necessarily render a person incapacitated. Alcohol and drugs affect individuals differently. Impairment levels vary and are the product of the nature of all substances involved, height, weight, tolerance, quantity and pattern of food and sleep, and drinking pattern.

In evaluating affirmative consent in cases involving incapacitation, the university considers the totality of available information in determining two issues:

(a) Incapacitation of the Reporting Party; AND
(b) Knowledge of the Respondent:

1. Did the Respondent know the Reporting Party was incapacitated? Or

2. Should the Respondent reasonably have known that the Reporting Party was incapacitated?

If both (a) and (b) are answered positively, affirmative consent was absent and the conduct a likely violation of this policy.

### 4. **Reasonable belief in affirmative consent**

EXHIBIT A
PAGE 424

CW 001160

Reasonable belief in affirmative consent is a defense to sexual assault and non-consensual sexual contact. The totality of circumstances *known* and *reasonably should have been known* are evaluated in determining whether a Respondent's belief is actual and reasonable.

Belief in affirmative consent is not reasonable if it arose from a Respondent's intoxication or recklessness. Further, such belief is not reasonable if steps are not taken to determine affirmative consent**.**

## C. Other sexual misconduct

### 1. Non-consensual viewing, recording, and dissemination

The privacy and dignity of all persons in the university community must be zealously guarded. The following conduct is prohibited:

(a) Observing or recording by any means the nudity or sexual activity of another without that person's consent;
(b) Allowing another to observe or record the nudity or sexual activity of another without that person's consent;
(c) Sharing images or recordings of the nudity or sexual activity of another without that person's consent.

### 2. Exposure

Exposure of the genitals to another without that person's consent is prohibited conduct.

## D. Stalking

Stalking is a course of conduct directed at another person that would cause a reasonable person (i) to fear for their safety or the safety of others, or (ii) to suffer substantial emotional distress.

"Course of conduct" means behavior involving two or more acts in which the Respondent directly or indirectly monitors, follows, observes, threatens, surveils, communicates to or about the Reporting Party, or interferes with the Reporting Party's property.

"Substantial emotional distress" means significant mental suffering or anguish.

Stalking includes "cyber-stalking." Cyber stalking is a course of conduct in which a Respondent uses electronic media, like the internet, social networks, blogs, cell phones, or text messages to cause reasonable fear or emotional distress.

Stalking often involves individuals known to each other or who have a current or previous relationship. It may also involve strangers.

Stalking is experienced by women and men of all races, ethnicities, religions, ages, abilities and sexual orientations. It can affect every aspect of a Reporting Party's life. It often begins with phone calls, emails, text messages or letters and may escalate to physical violence. Some examples of behavior, when part of a course of conduct, which may come under this definition:

- Unwanted communication, including face-to-face contact, telephone calls, voice messages, emails, text messages, postings on social networking sites, written letters, or gifts;

- Posting picture(s) or information on social networking sites or other websites;

- Sending unwanted or unsolicited email or chat requests;

- Posting private or public messages on school bulletin boards or internet sites;

- Installing spyware on another person's computer;

- Using Global Positioning Systems (GPS) to monitor another person;

- Pursuing, following, waiting or showing up uninvited at or near a course; classroom, residence, workplace or other places frequented by the victim;

- Surveillance or other types of observation, including staring or "peeping";

- Vandalizing property;

- Gathering information about an individual from friends, family or co-workers;

- Threatening to harm self or others;

- Defaming by lying to others about the victim (e.g., rumors of infidelity, etc.).

## E. Intimate partner violence

Intimate partner violence, also referred to as domestic violence or dating violence, means violence committed against a person who is a spouse or former spouse, a cohabitant or former cohabitant, a person with whom they have a child, or with whom they have a previous or current dating, romantic, intimate, or sexual relationship.

Violence means causing physical harm to the person or to their possessions. Intimate partner violence may also include non-physical conduct that would cause a reasonable person to be fearful for their safety; examples include economic abuse and behavior that intimidates, frightens, or isolates. It may also include sexual assault, sexual misconduct, or stalking. Intimate partner violence can be a single act or a pattern of conduct.

In evaluating *non-physical* conduct, the university considers whether the conduct is sufficiently severe, persistent or pervasive that it (i) *unreasonably* interferes with, limits, or deprives an individual from participating in or benefitting from the university's education or employment programs, activities, or living environment or (ii) causes substantial emotional distress. The totality of known circumstances, including the nature, frequency, intensity, location, context, and duration of the conduct, will be considered from both a subjective and objective perspective.

In evaluating self-defense in cases involving intimate partner violence, the university considers the totality of known information in determining three issues:

(1) Reasonable belief in imminent danger of physical harm;
(2) Reasonable belief in the immediate need to use force;
(3) Use of no more force than reasonably necessary.

If either belief (in imminent harm or in immediate need) is not reasonable or disproportionate force was used, a claim of self-defense is not valid and the conduct may be a violation of this policy.

## F. Malicious dissuasion and retaliation

No student or organization may maliciously prevent or dissuade another *from making a good faith report* of prohibited conduct or *participating* in an investigation of prohibited conduct. Malicious means behavior made in bad faith and intended to thwart or interfere with the rights described in this policy. Malicious prevention/dissuasion describes conduct *prior to a report* of prohibited conduct or *during* an investigation. It also includes *any contact* with a member of the *Misconduct Sanctioning Panel* or *Appellate Panel* made after notification of charges and with the intent to influence the outcome of the process.

No student or organization may *retaliate against another who brings a good-faith report* of prohibited conduct or *participates* in an investigation of prohibited conduct. Retaliation means any adverse action taken against another. Threats and attempts to retaliate are equally prohibited. Retaliation describes conduct *after a report* of prohibited conduct. Such retaliation may include:

- Coercion, intimidation, interference, harassment or threatening behavior;
- Excluding or blocking someone from a team, activity, organization, or course participation due to that person's having filed a complaint or been a witness as part of an investigation;
- Spreading negative information about another.

Good faith pursuit of administrative, civil, or criminal action does not constitute retaliation.

## G. Violation of an interim measure

Interim measures are actions taken by the university in response to a report of prohibited conduct. Interim protective measures which require compliance by a Respondent are discussed in section IV above. Measures include no contact orders, modifications of work or academic schedules, residential relocation, restriction of campus activities or access, and interim suspension.

Failure to comply with interim measures is a separate and independent violation. A Respondent may be found in violation for failure to comply with an interim measure without being found responsible for the underlying report of prohibited conduct.

## H. Discrimination by a student organization

No student organization may discriminate against anyone in the university community based on a protected characteristic.

Discrimination is unfair treatment based on a protected characteristic that is sufficiently severe, persistent or pervasive to unreasonably (i) interfere with, (ii) limit, or (iii) deprive an individual from participating in or benefitting from the university's education or employment programs, activities, or living environment.

The totality of known circumstances, including the nature, frequency, intensity, location, context, and duration of the conduct, will be considered.

Discrimination in membership selection based on sex is permitted for those organizations that are exempted from Title IX compliance.

# VII.    General Principles of Investigation and Adjudication

## A.  General principles

### 1. Presumption of non-responsibility

The investigation is a neutral, fact-finding process. Reports are presumed made in good faith. Further, Respondents are presumed not responsible. This presumption is overcome only when a preponderance of the evidence establishes that the Respondent committed the prohibited conduct charged.

### 2. Standard of proof

The standard of proof to find a violation of this policy is a preponderance of the evidence. Preponderance of the evidence means that based on the totality of evidence and reasonable inferences drawn therefrom, it is more likely than not that the Respondent committed the prohibited conduct charged.

Put another way, the preponderance of the evidence means such evidence that when weighed against that opposed to it, has the more convincing force and the greater probability of truth.

### 3. Evidence

Rules of evidence and discovery used in state and federal proceedings are not applicable to the investigatory process for prohibited conduct. The investigation will consider information that is relevant, material, and temporally proximate to the conduct at issue; in other words, information that makes the existence of a fact or inference more or less likely.

The *Title IX Coordinator* may exclude information that is not relevant or is not considered credible or reliable in the *investigatory* process. For instance, polygraph tests will not be considered in determining whether a fact exists.

#### (a)    Character evidence

Character witnesses, statements, or letters are not admissible as evidence and are not considered.

Examples of character evidence include statements, resumes, transcripts, and letters from friends, family, or faculty.

With the exceptions listed in (b) and (c) below, prior acts are not admissible to prove *disposition to commit* prohibited conduct. Prior acts of prohibited and non-prohibited conduct by a Respondent may be admissible to establish motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake/accident.

#### (b)    Prior sexual history

Generally, the sexual history of a Reporting Party, Respondent, or witness will not be admitted or considered as evidence unless directly relevant and temporally proximate to an issue.

Character or reputation regarding sexual activity is *never* relevant and will not be considered as evidence.

*When is sexual history relevant?*

(i) When there is evidence of substantially similar conduct by a *Respondent*, regardless of a finding of responsibility. This evidence may also be relevant to establish motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake/accident;
(ii) When there is prior sexual history between the parties and the Respondent states that the Reporting Party gave consent. Specifically, their prior sexual history may be relevant to assess how consent was communicated between the parties. However, the mere fact of a current or previous dating/sexual relationship does not constitute consent;
(iii) When sexual history may be relevant to prove a material fact. For example, to explain an injury or physical finding.

#### (b)    Prior acts of Intimate Partner Violence

Prior acts of intimate partner violence by a Respondent, regardless of a finding of responsibility, are admissible in determining responsibility in an investigation for the same or similar conduct.

Prior acts of intimate partner violence may also be relevant to establish determining motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake/accident.

## B.  Procedural protections

During the process outlined in this policy, both the Reporting Party and the Respondent are granted the following procedural protections:

- A summary of rights, investigation procedures, and avenue of appeal.

CONFIDENTIAL

EXHIBIT A
PAGE 427

CW 001163

- Equal treatment.

- A fair, thorough, reliable, neutral and impartial investigation by a trained and experienced investigator.

- Written notice of the alleged policy violation including the specific acts, the date/period of time, and location.

- Written notice of the requirement to meet with the investigator. If the Respondent fails to respond to this notice and schedule an appointment with the *Title IX Office*, an administrative hold will be placed on the Respondent's record prohibiting registration transactions until an appointment is completed. Restrictions may also be placed on registration transactions for good cause. An investigation may be conducted in absentia when a student fails to respond to initial notification. There may be times when the University may proceed with the investigation without the Reporting Party. See section VIII for a description of that process.

- The opportunity to provide relevant information and names of relevant witnesses. Declining to present information or witnesses will not be considered an admission of responsibility.

- The opportunity to inspect documents and/or relevant information gathered during the investigation. Medical and counseling records are confidential records that neither party is required to disclose.  However, if these records are disclosed to the investigator, the other party will be allowed to review the relevant portions.

- A written, timely decision outlining the findings of fact and violation by the *Title IX Office* and any sanctions imposed by the *Misconduct Sanctioning Panel*. These reports are provided to the parties simultaneously. Information about the appellate process will also be provided. Notice will be emailed to the student's email address of record in the Student Directory (typically, @usc.edu), unless otherwise arranged by the student. If a notice is mailed through the postal system, it is considered received three days after mailing.

- The opportunity to appeal the findings of the *Title IX Office* or the *Misconduct Conduct Sanctioning Panel* within 5 calendar days of receipt of the written decision. Following the appeal process, both parties will receive a written and timely decision regarding the outcome of the appeal, explaining the basis for the decision. See sections X and XI below for more information on the sanctioning and appellate process.

## C.  Role of an advisor

Throughout the process, both the Reporting Party and the Respondent may use an advisor of their choice. The advisor may be any person – parent, friend mental health professional, certified victim's advocate, attorney – or an individual provided by the university. An advisor may not be a witness or have any conflicting role in the process or with a party.

The role of the advisor is to provide support and assistance in understanding and navigating the investigation process. To protect the privacy of those involved, all advisors are required to sign a confidentiality agreement prior to attending an interview or otherwise participating in the university's investigatory process.

The university's duty is to the student, not the advisor. All communication is made directly with the student. The process will not be unreasonably delayed to accommodate the schedule of the advisor. An advisor must be familiar with university policy and may be required to meet with the *Title IX Coordinator* or other university administrator in advance of participation in university proceedings.

The advisor may not testify in or obstruct an interview, author written submissions, or disrupt the process. The *Title IX Coordinator* has the right to determine what constitutes appropriate behavior of an advisor and take reasonable steps to ensure compliance with this policy.

To limit the number of individuals with confidential information about the issues, each party may identify *one* advisor. Advisor changes may be made in exceptional circumstances and are permitted *prior* to Evidence Review only.

## D.  Status of a Respondent during an investigation

In most cases, the status of a Respondent will not be altered upon receipt of a report or during an investigation.

In some cases, interim protective measures may be imposed when there is information that, if true, indicates the student or student organization poses a substantial threat: (i) to the safety or well-being of anyone in the university community; (ii) to the property within the university community; or (iii) of disruption or interference with normal university life or functions.

*Some factors* considered in determining whether to authorize interim protective measures include:

CONFIDENTIAL    **EXHIBIT A PAGE 428**    CW 001164

- The nature and scope of the alleged conduct, including whether the reported behavior involved the use of a weapon or force;

- The risk posed to any individual or to the campus community including the risk of additional violence or significant disruption of university life or function;

- Whether there have been other reports of other prohibited conduct or other misconduct by the Respondent;

- Whether the report reveals a pattern of misconduct related to prohibited conduct at a given location or by a particular group;

- The university's obligation to provide a safe and non-discriminatory environment;

- The timing of the investigation in the academic calendar; and

- The ability of an interim measure to reduce or mitigate the threat.

Interim protective action may include exclusion from all or part of university housing, exclusion from specified activities or areas of campus, or *prohibition from representing the university in any capacity* such as playing on an official team, serving in student government, and performing in an official band, ensemble, or production.

Interim protective measures may also include interim suspension which means exclusion from all classes, seminars and programs; prohibition of participation in university-sponsored activities; and exclusion from university premises.

A student or organization subject to interim protective measures is given prompt written notice of the charges and the interim measure. An opportunity for review of the measure is provided within 15 days of the notice by the *Vice President for Student Affairs* or designee. Review of an interim protective measure may also occur if there is a change in the facts or circumstances providing the basis for the measure.

A review of an interim protective measure by the *Vice President of Student Affairs* does not evaluate the substance of the report or predict an investigative outcome. The single issue at review is whether less protective measures adequately reduce or mitigate the threat.

The imposition of interim protective measures does not relieve the student from financial obligations to the university.

## E. Other procedural matters

### 1. Multiple Reporting Parties and/or Respondents

When incidents involve more than one Reporting Party and/or Respondent, the *Title IX Coordinator* will determine whether the investigations should be conducted separately or in one, consolidated investigation.

### 2. Pending criminal investigations and/or proceedings

For cases in which criminal investigations are concurrent or pending, the university must proceed independently. The mere fact that a criminal investigation exists is not considered grounds for delay.

However, the *Title IX Coordinator* will coordinate with law enforcement to insure that university process does not interfere with the integrity or timing of the criminal investigation. At the request of law enforcement, the university may temporarily defer the fact-finding portion of its investigation.

If a criminal investigation is proceeding, the *Title IX Coordinator* will communicate with the parties about resources/accommodations, procedural options, anticipated timing, and the implementation of necessary interim interventions.

Neither a decision by law enforcement regarding arrest or prosecution, nor the outcome of a criminal proceeding, are determinative to an investigation proceeding or the determination that a policy violation has occurred.

### 3. Group responsibility for student organizations

Student organizations may be held responsible for the acts of individual members. Acts that may hold a group responsible include the following types of circumstances:

(a) when a member of an organization is violating state law or university standards and other members present fail to indicate their disapproval, or by their continued presence without objection implicitly condone the behavior;
(b) when the acts grow out of or are directly related to the student organization's activities or an environment created by the organization;
(c) when the acts are those of guests of an organization, or by persons authorized or permitted to represent themselves as connected

CONFIDENTIAL
EXHIBIT A
PAGE 429
CW 001165

with the organization;

(d) when an organization places prospective members in a subordinate status prior to achieving full membership, or imposes any kind of probationary period prior to full membership, and hazing occurs.

It is not the number of members involved that is critical to a determination of organizational responsibility. The test is whether the activity is related to a student organization through one of these four circumstances *or* a private activity by a person who happens to be a member of the same student organization. The factors considered include whether the activity is one normally considered part of student organization life and whether the atmosphere encourages or condones the prohibited conduct by its members. See SCampus, Part G, for more information on organizational liability.

4. **Timing**

It is the university's goal to complete misconduct investigations and review by the *Misconduct Sanctioning Panel* (see section X. below) within 60 calendar days. The *Title IX Office* will make every effort to complete the investigation in a timely manner by balancing principles of thoroughness, fairness, and promptness.

In some cases, the *Title IX Coordinator* may determine that good cause exists to extend the 60- day period to conduct a fair and complete investigation, to accommodate an investigation by law enforcement, to accommodate the availability of witnesses or delays by the parties, to account for university breaks or vacations, or due to the complexity of the investigation.

Any extension for good cause will be shared with the parties in writing, and will include the reason for the delay and anticipated timing of completion.

# VIII. Initial Assessment

## A. Receipt and outreach

After receiving a report of prohibited conduct, the *Title IX Office* contacts the Reporting Party to explain rights under this policy and reporting options on and off campus; to invite the Reporting Party to an in person meeting; and to provide resources and appropriate referrals. This is called outreach and is most commonly done via the student's usc.edu email account.

Title IX also notifies the Relationship and Sexual Violence Prevention Services, a confidential resource described above, so that they may also conduct outreach.

The *Title IX Coordinator* may refer the report to the Office of Student Judicial Affairs and Community Standards (SJACS) if it is determined that the conduct does not involve a protected class issue or a form of prohibited conduct under this policy. Reports involving protected class issues that are made to SJACS are referred to the *Title IX Office*.

Upon report of prohibited conduct that involves a threat to the campus community by an individual or an organization, *interim protective measures* may be taken by the university. See sections IV Interim Measures and VII.D. Status of the Respondent above for a full explanation of *interim protective measures*.

## B. Intake

Any student who experiences prohibited conduct may make an appointment with the *Title IX Office* by telephone call, email, or in person. The first meeting is called intake.

At intake, the *Title IX Coordinator* and/or the investigator will gather information about the incident and assess the need for interim action with the student. Documentary material and a list of possible witnesses should be brought to this meeting. Supportive interim measures may be taken prior to and without an investigation.

At intake, the Reporting Party may address questions about the policy and the investigative process. The Reporting Party may bring an advisor to intake as described above.

## C. Request by Reporting Party to *not* proceed

A Reporting Party may request their name not be shared with a Respondent, no investigation be pursued, or no disciplinary action be taken. In these instances, the *Title IX Coordinator* and/or investigator will discuss the Reporting Party's concerns and seek to address and remedy barriers to report, like concern about retaliation or lack of clarity about procedural options or potential outcomes.

The *Title IX Coordinator* will assess appropriate and/or possible action when a Reporting Party requests anonymity or when a Respondent is unknown; specifically, what actions may address the effects of the reported behavior.

The *Title IX Coordinator* will determine the appropriate manner of resolution under this Policy. The university will seek resolution consistent with the Reporting Party's request while also protecting the health and safety of the Reporting Party and the university community.

In those instances when the *Title IX Coordinator* determines that the university must proceed with an investigation despite the request of the Reporting Party, the *Title IX Coordinator* will notify the Reporting Party that the university intends to initiate an investigation. The Reporting Party is not required to participate in this type of investigation or in any subsequent actions taken by the university.

CONFIDENTIAL

**EXHIBIT A PAGE 430**

CW 001166

*Some factors* considered in determining whether the university must proceed despite the request of the Reporting Party:

- The nature and scope of the alleged conduct, including whether the reported behavior involved the use of a weapon or force;

- The risk posed to any individual or to the campus community including the risk of additional violence or significant disruption of university life or function;

- Whether there have been other reports of other prohibited conduct or other misconduct by the Respondent;

- Whether the report reveals a pattern of misconduct related to prohibited conduct at a given location or by a particular group;

- The university's obligation to provide a safe and non-discriminatory environment;

- Whether there is sufficient evidence to proceed without the participation of the Reporting Party; and

- Whether principles of fairness require initiation and/or completion of an investigation.

The university's ability to fully investigate and respond may be limited if the Reporting Party requests anonymity or declines to participate in an investigation. The university will, however, take other action to limit the effects of the prohibited conduct and prevent its recurrence.

In all cases, the final decision on whether, how, and to what extent the university will conduct an investigation, and whether other measures will be taken in connection with a report of prohibited conduct, rests solely with the *Title IX Coordinator*.

## D. Intervention in lieu of investigation

Some conduct reported under this policy may be appropriately addressed by intervention prior to or during an investigation. Intervention is a remedies-based, non-disciplinary approach designed to address reported behavior, prevent recurrence, and remedy effects without a formal finding of responsibility and without taking disciplinary action against a Respondent.

Intervention prior to or during an investigation will be considered only when consistent with institutional values and legal obligations. Intervention is not appropriate for cases involving sexual assault, sexual contact, or intimate partner violence.

Examples of interventions are targeted or broad-based educational programming/training, direct confrontation of the Respondent, and/or direct or indirect action by the *Title IX Coordinator* or the university. Depending on the form of intervention used, it may be possible to maintain anonymity of the Reporting Party. Intervention will never require the Reporting Party to directly confront the Respondent.

Failure to comply with any required act in an intervention may result in a formal investigation and resultant disciplinary action.

# IX. Investigation, Evidence Review and Hearing

It is the responsibility of the *Title IX Coordinator* to oversee prohibited conduct reports and investigations to ensure timely resolution and compliance with Title IX and this policy.

Both parties have the right to have an advisor present at every meeting described in this section.

## A. Investigation

### 1. Notification

If the university proceeds to a formal investigation, the Reporting Party and the Respondent are notified of the investigation and the charged policy violations.

The Respondent is also provided information about the policy, procedural protections, support resources, and appropriate referrals. The Respondent will also be given a date by which they must contact the investigator. Respondents who do not respond to the notification within the designated time frame or who cannot be contacted after reasonable attempts remain subject to an investigation and any sanction imposed as a result of a finding of responsibility. See Procedural Protections section above.

### 2. Fact-gathering

It is the responsibility of the university, not the parties, to gather information and interview witnesses.

CONFIDENTIAL    **EXHIBIT A PAGE 431**    CW 001167

10/14/202... Student Misconduct | Policy... USC... Page... Class Procedures...

Case 2:20-cv-09539-DSF-RAO Document 32-3 Filed 04/25/22 Page 430 of 434 Page ID #:659

The investigator will meet separately with the Reporting Party and Respondent. If not previously provided, each party is given a summary of procedural protections (see section VII), the investigative process, avenues of appeal, and information about available resources.

Written statements are not accepted in lieu of interviews of parties and witnesses by the Title IX Office.

The investigator will ask both parties for all information related to the alleged prohibited conduct; including names of witnesses, documents, emails, texts, social media posts, photographs, the existence of video footage, and call logs. Information may be presented by the parties until Evidence Review.

During the course of the investigation, the investigator may identify additional witnesses and gather supplemental evidence.

Students, staff, and faculty have the responsibility to participate fully and truthfully in University investigations

### 3. Evidence Review

At the conclusion of the investigation, the Reporting Party and the Respondent are given an individual and separate opportunity to review the information collected. This is called Evidence Review.

Evidence Review occurs at the *Title IX Office*. Witness statements, physical and documentary evidence, and audio/visual material is provided for review. Parties are not provided copies or allowed to take photographs. Parties may take notes. Parties are permitted to review the material for as much time as requested.

Parties are encouraged to submit questions to be asked of the other party by the *Title IX Coordinator* at the *Evidence Hearing*. Parties may submit written questions within twenty-four (24) hours from the conclusion of the *Evidence Review*.

Information collected is reviewed in its original form. Information that is excluded from review will not be considered in making findings of fact or determining responsibility. The *Title IX Coordinator* may exclude evidence from review that violates the privacy rights of third parties.

### 4. Evidence Hearing

After each party has reviewed the evidence, the Reporting Party and Respondent are given an individual and separate opportunity to respond. This is called the Evidence Hearing.

The Evidence Hearing occurs at the *Title IX Office* and is held by the *Title IX Coordinator* and assigned investigator. It is an opportunity for each party to respond orally or by submission of a written statement to the evidence collected during the investigation and viewed in Evidence Review. The information reviewed is available for reference and consultation at the Hearing. Written responses are not accepted in lieu of attendance at the Hearing.

At this time, the *Title IX Coordinator* will ask each party the questions submitted by the other. The *Title IX Coordinator* has the responsibility to exclude questions that are inflammatory, argumentative, or relate to character evidence or non-relevant sexual history. *Responses provided are considered evidence and may be used in the findings of fact and responsibility.*

If new information is shared by a party during the Evidence Hearing, the opposing party will be provided an opportunity to review and respond. New information is relevant, material, and temporally proximate to the conduct at issue, and tends to make a fact or inference more or less likely; it is not responsive commentary or emotion.

## X. Findings

At the conclusion of the Evidence Review and Hearing, *Title IX Office* prepares a Summary Administrative Review (SAR). The SAR is a report that presents and analyzes the information collected and makes *findings of fact* and *policy violation*.

In preparing the report, the investigator will review all evidence and determine what information is relevant and material to the incident. The investigator will make *findings of fact*.

In consultation with the *Title IX Coordinator* and using a preponderance standard, the investigator will determine whether a Respondent *violated this policy* based on those findings of fact.

Typically, there are two possible outcomes:

*(1) Responsible*: a Respondent is found *responsible* if the preponderance of facts indicate that a Respondent violated this policy.
*(2) Insufficient evidence*: in some cases, there is *insufficient evidence* to make a finding. A conclusion that there is insufficient evidence does not mean a Respondent is found not responsible.

The SAR is provided to both parties upon completion. If there is a finding of responsibility, the SAR is forwarded to the *Misconduct Sanctioning Panel*. When there is insufficient evidence to make a finding, either party may directly appeal to the *Appellate Panel*.

The *Title IX Office* cannot and does not determine whether a crime has been committed. That can only be done through the legal process.

10/14/2019    Student Misconduct : Universitywide Policies : USC : Title IX of the Education Amendments of 1972 ... a consensual misconduct process for all students or a class of students ...

Case 2:20-cv-09539-DSF-RAO   Document 32-3   Filed 04/25/22   Page 431 of 434   Page ID
#:660

# XI. Misconduct Sanctioning Panel

Upon a finding of responsibility, the SAR is forwarded to the *Misconduct Sanctioning Panel* for sanctioning.

## A. Composition

The *Misconduct Sanctioning Panel* is composed of three individuals. Two are staff or faculty designated by the Provost and Senior Vice President for Academic Affairs. One is an undergraduate or graduate student depending on the status of the Respondent. The undergraduate panel member will sanction cases involving undergraduate Respondents, the graduate panel member will sanction cases involving graduate Respondents.

The *Misconduct Sanctioning Panel* will be trained bi-annually by the *Title IX Coordinator*.

## B. Process

The Sanctioning Panel meets bi-weekly in a noticed, closed meeting. The *Title IX Coordinator* provides the SARs to be reviewed seven days prior. The SAR is redacted to delete the names and identifying information of the Reporting Party and Respondent.

The *Title IX Coordinator* is present during the meetings of the *Misconduct Sanctioning Panel* but does not have a vote in determining the specific sanctions.

The *Misconduct Sanctioning Panel* reviews the findings of fact and conclusions of policy violation(s) made by the *Title IX Office* and determines what disciplinary sanction is appropriate. There are no mandatory sanctions in this policy. The *Misconduct Sanctioning Panel* considers the totality of findings to assess the appropriate discipline in each individual case.

The *Misconduct Sanctioning Panel* does not reassess or re-evaluate the findings of fact or conclusions of policy violation made by the *Title IX Office*. The role of the *Sanctioning Panel* is to determine what sanction is appropriate based on the conclusions of the *Title IX Office*.

The *Title IX Coordinator* will simultaneously provide both the Reporting Party and the Respondent the results of the *Misconduct Sanctioning Panel* in writing.

## C. Sanctions

Sanctions are based on the gravity of a Respondent's actions and their university conduct record. Sanctions are designed to hold students accountable for their actions and to protect the safety of the university community.

Sanctions may include: expulsion, suspension (imposed or deferred), revocation of admission or degree, dismissal from an academic unit, removal from an individual course or section, disciplinary probation, mandated counseling, warning, restitution, restriction from university housing or employment, removal from specific activities, community reparations, and no contact orders. Other sanctions may be imposed. See SCampus, section B, 11.80 – 11.94 for more information on sanctions.

The university places a hold on registration or transcript release during an appeal if a Respondent has been found responsible. With the exception of cases involving expulsion or suspension, the transcript and registration hold is lifted after a final decision by the *Appellate Panel* and *Vice President of Student Affairs* or the period for filing an appeal has passed.

If the sanction is expulsion or suspension, a Respondent is immediately placed on interim suspension. This period of interim suspension counts towards the total suspension period. If the *Misconduct Appellate Panel* and *Vice President for Student Affairs* (see below) upholds the suspension or expulsion, or if no appeal is filed, the sanction will be documented on the Respondent's academic record as taking effect on the date of written notice of the decision by the *Misconduct Sanctioning Panel*.

If the final sanction is expulsion, a permanent notation will appear on the student's transcript. If the expulsion occurs during a semester in which a student is enrolled, the enrollment is canceled by the university resulting in marks of "W."

If the final sanction is suspension, enrollment is cancelled and the student receives marks of "W" in all courses currently enrolled. The student is prohibited from performing any registration transactions during the period of suspension. The *Vice President for Student Affairs* or designee may remove the prohibition upon a showing of good cause to allow the student to register for courses after the period of suspension ends. Further, a notation will appear on the student's transcript indicating the dates of suspension. Upon earning a degree from the university, the notation may be omitted.

During the period of suspension, a student may not complete academic work at another institution for consideration toward a USC degree. Any violation of policy or condition of suspension may result in expulsion.

# XII. Appellate Panel

Following a finding of insufficient evidence by the *Title IX Office* or a sanctioning decision by the *Misconduct Sanctioning Panel*, either the Reporting Party or the Respondent may file a written appeal.

## A. Composition

The *Appellate Panel* is composed of three individuals, at least one of whom is a faculty member, appointed by the *Vice President for Student Affairs*. The *Appellate Panel* is trained on university procedures and Title IX requirements by the *Title IX Coordinator*, and is

CONFIDENTIAL    **EXHIBIT A**    CW 001169
**PAGE 433**

advised by the *Title IX Appellate Coordinator*.

The *Title IX Appellate Coordinator* is designated by the Vice President of Student Affairs.

## B. Process

The *Appellate Panel* is responsible for reviewing the appeal and making recommendations to the *Vice President for Student Affairs*. A review by the *Appellate Panel* is narrowly-tailored to the provisions of this policy and relevant reasons for appeal. Appeals are not a full rehearing of the facts or findings.

The procedural rights of neutrality and equal treatment apply to the appellate process.

### 1. Grounds for appeal

Appeals are documentary reviews in which no oral testimony is taken and no oral argument takes place. Appeals are determined on the merits of the documents submitted and evidence reviewed. Appellate documents should be as complete as possible.

The appeal must include the Appeal Request Cover Sheet provided by the *Title IX Office* or the *Title IX Appellate Coordinator* indicating the specific grounds for appeal, and arguments and documentation specifically relevant to and in support of the stated grounds for appeal. Appellants should refer to Guidelines for Writing Appeals, a document available from the *Title IX Appellate Coordinator*.

Appeals may only be brought on one or more of the following grounds:

(a) That new evidence has become available which is sufficient to alter the findings of fact and/or conclusions of policy violation made by the *Title IX Office* and which the appellant was not aware of or which could not have been reasonably obtained at the time of the original review.

(b) That the findings of fact made by the *Title IX Office* are not supported by substantial evidence in light of the whole record or that the conclusions of policy violations are not supported by the findings of fact.

(c) That the sanction imposed by the *Misconduct Sanctioning Panel* is grossly disproportionate to the violation found.

(d) That the *Title IX Office* or the *Misconduct Sanctioning Panel* deviated from the process set forth in this policy and such deviation had a material impact on the outcome of the investigation.

### 2. Timing and procedure

The *Appellate Panel* will meet as needed to review and consider appeals.

Appeals must be submitted within five calendar days from: (i) receipt of the SAR from the *Title IX Office* in a case in which insufficient evidence is found; or (ii) receipt of sanction by the *Misconduct Sanctioning Panel* in a case in which a Respondent is found responsible. The Vice President of Student Affairs may deem a late submission of an appeal reasonable under extraordinary or extenuating circumstances.

Written appeals are submitted electronically to the *Title IX Appellate Coordinator* at titleixappeals@usc.edu.

The *Title IX Appellate Coordinator* receives all appeals, and within one business day provides notice to the opposing party in writing. The opposing party has five calendar days to respond. Parties are not required to file an appeal, nor required to respond to an appeal filed by the opposing party. Not responding to an appeal is not considered agreement or concession to the issues raised by the opposing party.

The *Title IX Appellate Coordinator* provides all appellate documents to the *Appellate Panel*. The *Appellate Panel* reviews submitted appellate documents, the SAR, the sanctions, and any supporting documents relevant to the finding of insufficient evidence or responsibility.

Appeals and final decision shall be completed within thirty calendar days of the filing of an appeal, unless the *Vice President for Student Affairs* determines that there is good cause to extend that period.

### 3. Decision by the misconduct *Appellate Panel*

The *Appellate Panel* may make recommendations to the *Vice President for Student Affairs* as follows:

(a) If the *Appellate Panel* concludes that none of the grounds for appeal have been met, the *Appellate Panel* may recommend that the *Vice President for Student Affairs* affirm the conclusions of the *Title IX Office* and the sanctioning decision of the *Misconduct Sanctioning Panel* in their entirety.
(b) If the *Appellate Panel* concludes that new evidence has become available which is sufficient to alter the findings of fact and/or conclusions of policy violations made by the *Title IX Office* and which the appellant was not aware of or which could not have been reasonably obtained at the time of the original review, the *Appellate Panel* may recommend that the *Vice President for Student Affairs* remand the case to the *Title IX Office* for further investigation.
(c) If the *Appellate Panel* concludes that the findings of fact made by the *Title IX Office* are not supported by substantial evidence in

CONFIDENTIAL    **EXHIBIT A**    CW 001170

**PAGE 434**

light of the whole record or that the conclusions of policy violation reached by the *Title IX Office* are not supported by the findings of fact, it may recommend that the *Vice President for Student Affairs* reverse specific findings of fact or conclusions of policy violations and remand the case to the *Sanctioning Review Panel* for reevaluation of the sanctioning decision in light of the modified findings and conclusions.

In adjudicating an appeal on the grounds that the findings of fact were not reasonably supported by substantial evidence, *Appellate Panel* members may not substitute their judgment for that of the *Title IX Office* merely because they disagree with the findings or conclusion, nor will they make new findings of fact. Moreover, the *Appellate Panel* may not substitute its opinion on credibility for the judgment of the investigator who saw and heard the witnesses and parties. The role of the *Appellate Panel* is *not* to decide whether it would have reached the same factual conclusions as the *Title IX Office*, but rather to decide whether a *reasonable* fact-finder could have come to the same conclusion based on the facts in the record. If there is a conflict in the evidence and a *reasonable* fact- finder could have resolved the conflict either way, the *Appellate Panel* may not reverse the *Title IX Office's* findings of fact.

The *Title IX Office's* conclusions of policy violation will not be changed if supported by the findings of fact.
(d) If the *Appellate Panel* concludes that the sanction imposed by the *Misconduct Sanctioning Panel* is grossly disproportionate to the policy violation(s) found by the *Title IX Office*, the *Appellate Panel* may recommend that the *Vice President for Student Affairs* modify (increase or decrease) the assigned sanctions.

In adjudicating an appeal on the grounds that the sanction imposed by the *Misconduct Sanctioning Panel* is grossly disproportionate to the policy violation(s) found by the *Title IX Office*, the *Appellate Panel* members will not substitute their judgment for that of the *Misconduct Sanctioning Panel* merely because they disagree with the sanctioning decision.
(e) If the *Appellate Panel* concludes that the *Title IX Office* or the *Misconduct Sanctioning Panel* deviated from the process set forth in this policy and that such deviation had a material impact on the outcome of the investigation, the *Appellate Panel*

IX Office or to the *Misconduct Sanctioning Panel* with instructions to correct the deviation. If the deviation cannot be reasonably corrected, the *Appellate Panel* may recommend that the *Vice President for Student Affairs* take such other corrective action as he or she may deem appropriate.

The *Title IX Appellate Coordinator* is present during the Panel's deliberations but is not a member of the *Appellate Panel* and does not have a vote.

## C. Final decision

The *Title IX Appellate Coordinator* informs the *Vice President for Student Affairs* of the recommendation of the *Misconduct Appellate Panel* in writing within seven calendar days of the conclusion of review. That time may be extended for good cause by the Vice President for Student Affairs.

The recommendations of the *Misconduct Appellate Panel* are accepted or modified by the *Vice President for Student Affairs*. The decision to modify or accept the recommendations is a matter of the *Vice President's* discretion and upon his or her review of the entire record of the case.

The final decision of the *Vice President for Student Affairs* will be as follows:

(1) Affirm. The *Vice President for Student Affairs* may affirm the conclusions of the *Title IX Office* and the sanctioning decision of the *Misconduct Sanctioning Panel* in their entirety.
(2) Remand. The *Vice President for Student Affairs* may remand the case:

(a) To the *Title IX Office* for further investigation in light of new evidence or with instructions to correct a deviation from the process set forth in this policy. Both parties will be notified of the remand and will be given the opportunity to respond to any new evidence that is collected. The *Title IX Office* will issue a revised SAR, which will be provided to both parties and to the *Misconduct Sanctioning Panel*. The *Misconduct Sanctioning Panel* will then issue a revised sanctioning decision, which will be provided to both parties and the *Vice President for Student Affairs*. Thereafter, the *Vice President for Student Affairs* will issue a final decision.

(b) To the *Misconduct Sanctioning Panel* to review modified findings of fact and/or conclusions of policy violations or with instructions to correct a deviation from the process set forth in this policy. The *Misconduct Sanctioning Panel* will issue a revised sanctioning decision, which will be provided to both parties and the *Vice President for Student Affairs*. Thereafter, the *Vice President for Student Affairs* will issue a final decision.

(c) Modify. The *Vice President for Student Affairs* may increase or decrease the assigned sanctions.

The *Vice President for Student Affairs* makes the final decision on appeal. Once made, this decision is final and binding upon all parties. There is no further appeal.

The *Vice President for Student Affairs* simultaneously provides both the Reporting Party and the Respondent the final decision in writing. Final results are available only after the appellate process has been exhausted or waived.

# Responsible Office

**Title IX**
**http://titleix.usc.edu/**
titleix@usc.edu
(213) 740-5086

CONFIDENTIAL

**EXHIBIT A
PAGE 435**

CW 001171

## Issued by

Michael Quick, Provost and Senior Vice President, Academic Affairs
University of Southern California

**USC Employee Engagement and Communications**
oversees this website as well as university policy
development and communication.

✉ **scpolicy@usc.edu**

Website by **USC Web Services**

CONFIDENTIAL

**EXHIBIT A**
**PAGE 436**

CW 001172