IRWIN M. ZALKIN, ESQ. (#89957)
DEVIN M. STOREY, ESQ. (#234271)
ALEXANDER S. ZALKIN, ESQ. (#280813)
RYAN M. COHEN, ESQ. (#261313)
The Zalkin Law Firm, P.C.
10590 West Ocean Air Drive, Ste 125
San Diego, CA 92130
Tel:  858-259-3011
Fax: 858-259-3015
Email: irwin@zalkin.com
        dms@zalkin.com
        alex@zalkin.com
        ryan@zalkin.com


CHELSEA MUTUAL, ESQ. (#299656)
California Women's Law Center
360 N. Pacific Coast Hwy, Ste. 2070
El Segundo, CA 90245
Tel: 323-951-1041
Email: chelsea.mutual@cwlc.org

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Courtney Whittier, Individually, | Case No.: 2:20-cv-09539-DSF-RAO |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| The University of Southern California, | |
| Defendant. | Date: May 23, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. Dale S. Fischer<br>Courtroom: 7D |
| | Complaint Filed: October 16, 2020<br>Trial Date: January 17, 2023 |

## I.   INTRODUCTION

Title IX prohibits discrimination on the basis of gender in educational institutions. The Supreme Court has acknowledged that when an educational institution acts with deliberate indifference to sexual misconduct, it discriminates on the basis of sex in violation of Title IX. Central to Title IX's protections is the requirement that schools remain neutral while investigating any alleged sexual misconduct. The evidence shows in this case that Defendant, The University of Southern California ("USC") was anything but neutral in the manner in which it investigated Plaintiff Courtney Whittier's complaint that she was sexually assaulted by John Doe while both were attending USC's Gould School of Law.

USC's mismanagement of Ms. Whittier's report was not an isolated mistake. Prior to Ms. Whittier's assault, USC had a long history of covering up sexual misconduct on campus and failing to train its employees and students on Title IX, creating a heightened risk for sexual misconduct between its students to occur.

Notwithstanding, USC asks this Court to grant its Motion for Summary Judgment ("MSJ") and dismiss Ms. Whittier's case based almost entirely on cherry-picked and out of context portions of her deposition and no other evidence. USC's request is absurd. *See Irish v. Magnussen Home Furnishings, Inc.*, No. CV 17-515 PSG (KSX), 2018 WL 6074528, at *2 (C.D. Cal. June 26, 2018) (Plaintiff's claims did not become frivolous after his deposition even though some of his factual disclosures weighed against his case); *Lotocky v. Elmira City School Dist.*, 102 F.

**1**

Supp. 3d 455, 457 (W.D.N.Y. 2015) ("a plaintiff's subjective beliefs are not an element of a *prima facie* case of disparate treatment"). USC's request becomes even more preposterous given that it has continued to withhold relevant evidence without justification depriving Ms. Whittier of a reasonable opportunity to oppose its MSJ and ultimately prove her case.[1] Despite USC's best efforts to "hide the ball," the evidence ascertained thus far creates factual questions as to Ms. Whittier's Title IX claims sufficient to defeat summary judgment.[2]

USC expects Ms. Whittier to respond to, and this Court to rule on, its MSJ on a wildly incomplete record. USC has abused the discovery process to intentionally deprive Ms. Whittier of evidence she needs to respond to its MSJ and ultimately prove her claims at trial. A simple look at the briefing schedule set by USC for its MSJ reveals the gamesmanship it has consistently employed in this matter. USC filed its MSJ before the close of discovery and set the first date possible for its MSJ to be heard. This forced Plaintiff to oppose its MSJ in only one week[3], even though Plaintiff repeatedly requested an extended briefing schedule for USC's MSJ, as this Court expects. Because of this gamesmanship, as well as other discovery abuses, Plaintiff requests that this Court stay further briefing on USC's

---

[1] A detailed description of USC's discovery abuses can be found in Plaintiff's Motion to Extend the Discovery Cutoff Deadline at Dkt. # 35.

[2] Upon consideration of USC's MSJ, Plaintiff agrees to voluntarily dismiss Count IV – Violation of Title IX, Erroneous Outcome.

[3] USC is allowed two weeks to file a reply.

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

MSJ and allow Ms. Whittier to file a supplemental opposition, or an entirely new opposition, after the close of discovery.

## II.   This Court Should Stay Briefing And Allow Ms. Whittier to File A Supplemental or New Opposition Brief Following Additional Discovery Pursuant To FRCP Rule 56(d)

As set forth in more detail in Plaintiff's April 27, 2022 Ex Parte Application [Dkt. No. 36], Plaintiff requests that, pursuant to Rule 56(d), the Court stay briefing on USC's MSJ and continue the MSJ hearing to 45 days after the current cut-off date, or to another reasonable date if this Court grants Plaintiff's pending motion to extend the discovery cut-off deadline. Rule 56(d) provides that where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its [summary judgment] opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). The Ninth Circuit has stated that a Rule 56(d) "continuance of a motion for summary judgment for purposes of conducting discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of evidence." *Tarutis v. Wal-Mart Stores, Inc.*, No. 12-CV-5076-RJB, 2013 WL 247710, at *2 (W.D. Wash. Jan. 23, 2013) (quoting *Burlington N. Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Ft. Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003)).  Plaintiff has satisfied the elements required to obtain relief under Rule 56(d) and should thus be given a reasonable opportunity to conduct the

additional discovery she needs to adequately oppose USC's MSJ and prepare her case.

First, USC's MSJ is premature.   Under the current Scheduling Order, discovery does not close until May 16, 2022 and the motion hearing cut-off date is not until September 20, 2022.   Dkt. No. 28.   There was no reason for USC to prematurely file its MSJ prior to the close of discovery other than to prejudice Plaintiff.

Second, Plaintiff has identified specific facts that further discovery are likely to reveal and explained why those facts would preclude summary judgment for USC.   The Ninth Circuit has stated that district courts "should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment."   *Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). As set forth in the Zalkin Declaration accompanying this application, Plaintiff has made that showing here.

Third, as set forth in detail in Plaintiff's April 25, 2022 Motion to Extend the Discovery Cut-Off Deadline and her April 27, 2022 Ex Parte Application, Plaintiff has "acted diligently and reasonably in pursuing discovery" from USC and is thus entitled to a stay of the MSJ briefing and continuance of the MSJ hearing.   *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004); *see also Tarutis*, 2013 WL 247710, at *2.   USC has repeatedly delayed production of responsive documents and

PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN
CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT

information and generally abused the discovery process throughout this litigation to prevent Plaintiff from obtaining the discovery she needs to prosecute her claims. This, along with the serious family health issues faced by Plaintiff's lead counsel, forced Plaintiff to seek an extension of the discovery cut-off date. *See id.* Therefore, USC's argument that Plaintiff has already had her opportunity to conduct discovery is "unavailing because, if any party is responsible for delaying resolution of this case, it is Defendant[]." *In Re Beshmada LLC*, 2013 WL 12119570, at *4 (C.D. Cal. Apr. 30. 2013) (granting Rule 56(d) motion in part and deferring summary judgment motion).

Plaintiff respectfully submits that a stay pursuant to Rule 56(d) "for purposes of conducting discovery" should be granted here "as a matter of course." *See Tarutis*, 2013 WL 247710, at *2 (quoting *Burlington*, 323 F.3d at 773–74).

To the extent this Court chooses not to stay briefing, Plaintiff responds to USC's MSJ as follows:

## III.   STATEMENT OF FACTS

<u>Department Of Education Investigations Of USC</u>

In 2018, the Department of Education Office for Civil Rights ("OCR") issued a letter ("2018 OCR Letter") outlining its findings following an investigation of USC for its alleged failure to comply with Title IX in the manner in which it responded to reports of sexual misconduct on campus. (UF 97). The OCR analyzed

data regarding all reports of sexual misconduct from 2010-2015[4] and concluded that USC was not compliant with Title IX in several ways. (UF 98). As a result of OCR's investigation, USC entered into a resolution agreement, ("2018 Resolution Agreement") with OCR. (UF 99). In the 2018 Resolution Agreement, USC committed to ensuring that all Title IX employees were properly trained. (UF 100).

<u>Ms. Whittier Is Sexually Assaulted By John Doe</u>

---

[4] In her Interrogatories, Set One, Plaintiff also asked for data regarding these very same reports from 2012-2017. Even though it had already compiled this data for the OCR prior to Plaintiff's lawsuit, USC refused to answer Plaintiff's interrogatory, claiming that ascertaining the information requested would be "overly burdensome."

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN
CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

## John Doe Hires Mark Hathaway

Mr. Hathaway is an attorney in Los Angeles, CA. (UF 111). Mr. Hathaway advertises himself and his firm as "Title IX/Education Defense Lawyers." (UF 112). Mr. Hathaway's website proclaims that:

> After representing more than a hundred students and faculty members who have been falsely accused of misconduct and unfairly punished at their educational institutions, Title IX / Education Defense Lawyers Mark Hathaway and Jenna Parker are uniquely adept at navigating complex and frustrating administrative misconduct proceedings and subsequent litigation.

(UF 113). Mr. Hathaway has also had an extensive history litigating against USC. (UF 114). To date, he has filed 33 civil actions against USC. (UF 116). Some of his civil actions have garnered significant media attention, including being reported on by the Los Angeles Times and the Daily Trojan. (UF 115). USC has been ordered to pay, at minimum, hundreds of thousands of dollars in attorney's fees to Mr. Hathaway based on his successful representation of students accused of sexual misconduct. (UF 117). Mr. Hathaway's representation of accused students is not limited to civil actions. (UF 118). Mr. Hathaway has represented accused students in 28 administrative investigations conducted by USC, 17 of which occurred prior to, or concurrent with Ms. Whittier's investigation.[5] (UF 119).

## Investigator Doe Raises Concerns About USC's Handling of Ms. Whittier's Investigation

---

[5] USC has inappropriately withheld virtually all information related to Mr. Hathaway's representation of accused students in its administrative proceedings despite Plaintiff's valid discovery requests seeking such information.

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

9

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**



In part based on USC's conduct with respect to Ms. Whittier's report, Investigator Doe filed a federal whistleblower lawsuit. (UF 138). The lawsuit alleges several of the facts described herein. Additionally, Investigator Doe alleges that Means intentionally and inappropriately characterized reports of sexual misconduct as "informal" in order to avoid federal reporting requirements for sexual misconduct in educational institutions. (UF 139).

## IV.    Summary Judgment Standard of Review

The standard under which a summary judgment motion is tested requires a showing "that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The judge's function is not himself to weigh the evidence and determine the truth of the matter but *to determine whether there is a genuine issue* for trial … Credibility determinations, the weighing of the evidence, and *the drawing of legitimate inferences* from the facts are <u>jury</u> functions …" *Anderson v. Liberty Lobby, Inc.*, 477 US at 249-55 (emphasis added). "The evidence of the non-movant *is to be believed,* and *all justifiable inferences are to be drawn in his favor.*" *Id.* In other words, the nonmovant's version of any disputed fact is presumed correct. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

## V.   Ms. Whittier's Pre-Assault Claim Must Not Be Dismissed Because USC Has Not Met Its Burden...

To plausibly allege a pre-assault Title IX claim, a plaintiff must allege:

> (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school."

*Karasek v. Regents of U. of California,* 956 F.3d 1093, 1112 (9th Cir. 2020). Here, USC challenges only two of the elements: causation and the context of the harassment occurring subject to USC's control.  As outlined below, a reasonable juror could find that Plaintiff can show both.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

A. <u>USC's Policy of Deliberate Indifference To Sexual Misconduct On Campus Caused Plaintiff's Sexual Assault</u>

USC boldly claims that Ms. Whittier cannot show the causal link between USC's policy of deliberate indifference to sexual misconduct and her own sexual assault by another USC student. USC's conclusion is bereft of any meaningful legal or factual support, likely because the law of causation in this Circuit strongly supports Ms. Whittier's position. That is, the evidence collected thus far creates a question of fact as to whether USC's policy of deliberate indifference to sexual misconduct on campus was a substantial factor in causing Ms. Whittier's assault, which is all Ms. Whittier must show to defeat summary judgment on this point.

    i.   *Causation Is A Question Of Fact*

"Causation is an intensely factual question that should typically be resolved by a jury." *P. Shores Properties,* LLC, 730 F.3d at 1168. "As the Seventh Circuit has recognized, '[o]nce a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct, he has done enough to withstand summary judgment on the ground of absence of causation.'" *Id. See Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 34 F.3d 753, 756 (9th Cir.1994) (""[A] question of causation is preeminently a question of fact, to be decided after trial"); *Est. of Gonzales v. Hickman*, 2006 WL 4959780, at *16 (C.D. Cal. Jan. 30, 2006) ("Questions of causation often involve factual disputes, which cannot be resolved by the court on a motion to dismiss or even on a motion for summary judgment.")

    *ii.*   *USC's Policy of Deliberate Indifference Was a Substantial Factor In Causing Ms. Whittier's Sexual Assault*

USC does not cite a single case to aid this Court in determining the proper causation standard to apply. Rather, it simply concludes that Ms. Whittier cannot show causation. The Court should ignore USC's conclusion because the law of causation in this Circuit mandates denial of summary judgment on this point.

"…[G]eneral tort principles of causation usually govern statutory discrimination cases except when there is a statutory command to the contrary." *P. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1167 (9th Cir. 2013); *see Stevenson v. Koskey*, 877 F.2d 1435, 1438 (9th Cir. 1989) ("Federal courts turn to the causation factors developed in the common law of torts to supply the necessary causation factor in the civil rights field"); *Johnson v. Hornung*, 358 F. Supp. 2d 910, 917 (S.D. Cal. 2005) ("Common law of torts provides the causation element applicable to civil rights violations.")

"…[P]laintiffs can demonstrate causation by proving that the defendant's wrongful conduct was a 'substantial factor' in bringing about the harm in question." *Id.* at 1168; *see* RESTATEMENT (SECOND) OF TORTS § 431 (2010) ("The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm.") (emphasis added). "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1220 (Cal. 1997), *as modified on denial of reh'g* (Oct.

**14**

22, 1997). "Even 'a very minor force' that causes harm is considered a cause in fact of the injury." *Uriell v. Regents of U. of California*, 184 Cal. Rptr. 3d 79, 85 (Cal. App. 4th Dist. 2015). Only a force which is infinitesimal or theoretical can be said to not be a substantial factor in bringing about an injury. *Id.*

Here, Ms. Whittier can show that USC's policy of deliberate indifference was a substantial factor in causing her sexual assault. Meaning, that it was just a "more than negligible or theoretical" cause of her sexual assault. *Rutherford*, 941 P.2d at 1220. The evidence thus far shows that OCR has investigated USC for Title IX violations three times since 2014. In the 2018 OCR Investigation and the 2020 OCR Investigation, OCR found systemic failures in the manner in which USC responded to sexual misconduct on campus dating as far back as the year 2000. Moreover, USC had a de facto policy of pressuring complainants to engage in informal resolution processes. USC had a powerful incentive to do so because it took the position that complaints resolved informally were not required to be publicly reported as required by federal law. Therefore, USC could actively conceal the breadth of sexual misconduct that occurred on campus from public consumption or scrutiny. And, even though it agreed to do so in its 2018 Resolution Agreement with OCR, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**15**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████

The expected consequence of covering up sexual misconduct on campus, failing to meaningfully investigate Title IX complaints, failing to adequately train staff with respect to responding to sexual misconduct, and failing to adequately train students with respect to sexual misconduct is that sexual misconduct will occur on campus. In other words, Ms. Whittier's sexual assault was the sort of injury that would be the expected consequence of USC's policy of deliberate indifference to sexual misconduct on campus, and for this reason alone, Ninth Circuit precedent mandates that summary judgment on this point must be denied. *P. Shores Properties,* LLC, 730 F.3d at 1168.

*iii.   USC's Arguments Are Unavailing*

Because it cannot defeat Ms. Whittier's actual arguments with respect to causation, USC instead advances strawman and red herring arguments hoping to confuse the Court as to Ms. Whitter's actual position. USC claims that Ms. Whittier's theory of liability would be "tantamount to saying USC will be liable

---

[6] In its MSJ, USC incorrectly assumes that Plaintiff's pre-assault theory is based solely on the fact that ████████████ ██████████████████████████████████████████ That is not the sole basis of Ms. Whittier's pre-assault claim as set forth in detail above.

**16**

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

under Title IX unless it finds a way to 'purge its school' of *all* harassment and *all* harassers." (MSJ at 19) (emphasis in original). Ms. Whittier advances no such theory. Rather, Ms. Whittier has offered particularized evidence that USC maintained a policy of deliberate indifference to sexual misconduct on campus, and that this policy was a substantial factor in causing her particular sexual assault by another USC student.

### B. USC Had Sufficient Control Over Ms. Whittier's Harassment

USC next argues that because Ms. Whittier's sexual assault took place at an off-campus apartment, it did not have the requisite control over the context of the harassment to satisfy the *Karasek* test. USC is wrong. In support, USC relies on *Brown v. State of Arizona*… However, *Brown* is a post-assault Title IX case and does not address the control element in a pre-assault Title IX action. The pre-assault, post-assault distinction is significant. In recognizing a distinct pre-assault theory of liability under Title IX, the Ninth Circuit in *Karasek* relied heavily on the Tenth Circuit's holding in *Simpson v. University of Colorado*. *See Karasek*, 956 F.3d at 1112 (in recognizing a pre-assault Title IX theory, stating, "[w]e find persuasive the Tenth Circuit's decision in *Simpson v. University of Colorado Boulder*…") The *Simpson* Court addressed, and rejected, the very argument USC makes here noting that in the ore-assault context, "[i]mplementation of an official policy can certainly be a circumstance in which the recipient exercises significant 'control over the harasser and the environment in which the harassment occurs.'" *Simpson v. U. of*

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

*Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007). Given the fact that the *Karasek* Court effectively took the holding in *Simpson*, which recognized a pre-assault theory of liability with respect to a particular university program, and broadened it to include an entire university campus, it follows that the *Simpson* Court's analysis of the control element would similarly apply here.  Ms. Whittier can show an official policy of deliberate indifference to sexual misconduct on campus, thus satisfying the pre-assault control element as articulated in *Simpson*.

Additionally, an analysis of the plain language of the post-assault and pre-assault control requirements further supports the conclusion that *Brown* is inapplicable here.  In a post-assault claim, a university must exercise "<u>substantial</u> control over <u>both the harasser</u> and the context in which the abuse occurred." *Davis*, 562 U.S. at 645 (emphasis added). In a pre-assault claim, a plaintiff must prove that the university created a "heightened risk of sexual harassment that was known or obvious, in a context subject to the school's control." *Karasek*, 956 F.3d at 1112. Significantly, in the pre-assault context, the control need not be "substantial" and there need not be any control over the harasser whatsoever. Here, Plaintiff became overly intoxicated during a school sponsored social event and went home with her perpetrator, where she was raped. A reasonable juror could conclude that on these facts, USC exercised some control over the context of the harassment which is all that is necessary to satisfy the control element in the pre-assault context.

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

Both a plain reading of the case law, and persuasive authority support Plaintiff's position here that USC exercised sufficient control over the context of Ms. Whittier's harassment to support a pre-assault Title IX claim. Accordingly, USC's MSJ on this point must be denied.

## VI.   A Question of Fact Exists As To Whether USC Violated Title IX In The Way It Responded To Plaintiff's Report

In order for an educational institution to be held liable for a post-assault violation of Title IX, a plaintiff must prove: (1) the educational institution is the recipient of federal funding, (2) the institution acted with deliberate indifference, (3) to sexual harassment/assault of which they had actual knowledge, (4) that is so severe, pervasive and objectively offensive so as to deprive the victim of access to the educational opportunities and/or benefits provided by the school. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

### A.   USC Responded To Ms. Whittier's Report Of Sexual Assault With Deliberate Indifference

An institution acts with "deliberate indifference" when it's response to known sexual harassment or sexual assault is "…clearly unreasonable in light of the known circumstances." *Davis*, 562 U.S. at 648. Because this standard "does not lend itself well to a determination by the Court on summary judgment," courts have permitted Title IX claims to go to juries if some evidence supports a finding of indifference. *See Jane Doe A v. Green,* 298 F. Supp. 2d 1025, 1036 (2004). As one court has concluded, "generally, deliberate indifference is a fact-intensive inquiry

**19**

---

and is often a question for the jury's determination." *Lilah R. ex. Rel. Elena A. v. Smith*, 2011 WL 2976805, at *5 (N.D.Cal. July 22, 2011); *see also Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) ("…determining what constitutes appropriate remedial action for allegations of discrimination in Title IX cases 'will necessarily depend on the particular facts of the case....'); *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F.Supp.2d 1187, 1196 (E.D. Cal. 2009) (*"deliberate indifference is a fact sensitive inquiry"*).

Here, as Judge Birotte Jr. in this District has acknowledged, "under the right circumstances, it is clear that enough bias could result in a response being deliberately indifferent." *Emily O. v. Regents of the U. of California*, CV-20-08159-AB-JEM, 2021 WL 1535539, at *8 (C.D. Cal. Mar. 9, 2021). Ms. Whittier can show "enough bias" here warranting denial of USC's MSJ. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Surely pre-determining the outcome of the investigation in favor of the perpetrator is "enough bias" to support a finding of deliberate indifference. Beyond this statement, as demonstrated in detail above, ████████████████████

████████████████████████████████████████████████████

██████████████████████████████

This evidence showing Means' bias sufficiently shows deliberate indifference for purposes of resolving USC's MSJ.

B. <u>USC Had Control Over John Doe and the Context of the Assault</u>

USC relies on *Brown* to argue that Ms. Whittier cannot meet the control element of a post-assault Title IX claim.  However, the circumstances in *Brown* are distinguishable from Ms. Whittier's. In *Brown*, the plaintiff's former boyfriend assaulted her at his off-campus apartment while both were students at the University of Arizona. *Brown*, 23 F.4th at 1175. With respect to the control element, the plaintiff argued that the university had control over the context of her harassment because the university had failed to respond to several other reports against her former boyfriend that had occurred in a context within the university's control prior to the plaintiff's assault.  *Id.* at 1180. The court disagreed, holding that the school could not be liable for an assault that occurred off-campus. *Id.* at 1175. However, the *Brown* court qualified its holding. The court noted, "[i]t would be unreasonable to conclude that Title IX gives educational institutions adequate notice that accepting federal education funds imposes on them liability for what happens between students off campus, <u>unconnected to any school event or activity.</u>" *Id.* at 1180 (emphasis added).

Here, Ms. Whittier's assault had a connection to a school activity. She became heavily intoxicated while she and John Doe were both at Bar Review, a school sponsored social event, before her off-campus sexual assault occurred. Thus, Ms. Whittier's circumstance falls squarely into the qualification noted in *Brown* for off-campus conduct that occurs in a context connected to a school

**21**

event or activity, and USC's argument must be rejected.

### C. Ms. Whittier Was Vulnerable To Additional Harassment

The *Davis* Court held that in a post-assault Title IX case, a plaintiff must not only satisfy the above elements, but also show that an institution's deliberate indifference either caused additional harassment or made the plaintiff vulnerable to additional harassment. *Davis*, 526 U.S. at 630.  USC argues that Ms. Whittier cannot satisfy the "additional harassment" element because she graduated in May 2018 and the majority of her investigation took place after she was no longer a USC student. USC ignores the time that Ms. Whittier was vulnerable to additional harassment while she was still a student at USC.[7] Specifically, USC can point to no evidence that it provided Ms. Whittier with interim safety measures to ensure that she  was not vulnerable to additional harassment. USC has certainly not met its "high burden" of showing that no jury could find that Ms. Whittier was vulnerable to additional harassment.

### D. There Is No Requirement That A Plaintiff Exhaust Judicial Remedies As A Prerequisite For Bringing A Post-Assault Title IX Claim

Grasping at straws, USC next argues that Ms. Whittier's post-assault claim must fail because she did not exhaust her judicial remedies prior to bringing suit. USC has not cited a single case that holds or even implies as much. That is because no such requirement exists. *See Doe v. White*, 440 F. Supp. 3d 1074, 1081 (N.D.

---

[7] All that is required under *Davis* is that a plaintiff was <u>vulnerable</u> to additional harassment, even if no actual harassment ever occurs. *Takla v. Regents of the U. of California*, 2015 WL 6755190, at *5 (C.D. Cal. Nov. 2, 2015).

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**

Cal. 2020) (denying the defendant's motion to dismiss for failure to exhaust state remedies).  Ms. Whittier's post-assault, deliberate indifference claim "does not seek to challenge [USC]'s final determination . . . and thus the *Doe* requirement to file a § 1094.5 writ of administrative mandate to review an agency decision is inapplicable." *Id.* at 1081.  Rather, Ms. Whittier's post-assault claim is based on the argument that USC's Title IX <u>investigation process</u> was flawed. The *Doe v. White* court explained that *Doe v. Regents of the University of California*, 891 F.3d 1147 (9th Cir. 2018), on which USC relies here, is distinguishable under these circumstances.  Based upon the nature of Ms. Whittier's post-assault claim, then, she "was not required to seek a writ in state court prior to filing" her claim.  *See White*, 440 F. Supp. 3d at 1080.

## VII.   A Reasonable Juror Could Conclude That USC Intentionally Violated Title IX

USC seeks dismissal of Plaintiff's claim for intentional violation of Title IX as duplicative of her other Title IX counts. This argument reveals USC's fundamental misunderstanding of Title IX law. Both the pre-assault and post-assault tests are designed to impose liability on educational institutions not for <u>intentional</u> conduct, but for conduct that is so egregiously indifferent that it is <u>as if</u> the institution acted intentionally. *See Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 643 (1999) ("We consider here whether the misconduct identified in *Gebser*—deliberate indifference to known acts of harassment—<u>amounts to</u> an intentional violation of Title IX, capable of supporting

23

a private damages action…"); *Mansourian v. Regents of U. of California*, 602 F.3d 957, 967 (9th Cir. 2010) *quoting Jackson v. Birmingham Board of Education,* 544 U.S. 167 (2005) ("In *Gebser* and *Davis,* the Court stated, 'we emphasized that [the notice] limitation on private damages actions is not a bar to liability where a funding recipient intentionally violates the statute.'")

  The evidence, and logical inferences drawn from it, supports the conclusion that USC intentionally discriminated against Ms. Whittier necessitating denial of USC's MSJ. A reasonable juror could conclude that, as described in detail above, USC predetermined John Doe's innocence prior to the conclusion of the investigation, thereby intentionally discriminating against Ms. Whittier.

## VIII. CONCLUSION

  This Court should deny USC's MSJ because, even on an incomplete record, Plaintiff has raised genuine issues of fact sufficient to defeat summary judgment. In the alternative, in the event this Court believes that the record thus far does not raise triable issues of fact, this Court should stay further briefing and allow Plaintiff to file a supplemental or new response to USC's MSJ at a reasonable time after the close of discovery pursuant to Fed. R. Civ. P. 56(d).

1    Date: May 2, 2022          Respectfully submitted,

2

3                                       By: */s/ Alexander S. Zalkin*
                                        Alexander S. Zalkin, Esq.
4                                       THE ZALKIN LAW FIRM, P.C.
                                        10590 W. Ocean Air Dr., Ste. 125
5                                       San Diego, CA 92130

6                                       Chelsea Mutual, Esq.
                                        CALIFORNIA WOMEN'S LAW
7                                       CENTER
                                        360 N. Pacific Coast Hwy., Ste. 2070
8                                       El Segundo, CA 90245

9                                       *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNIVERSITY OF SOUTHERN
CALIFORNIA'S MOTION FOR SUMMARY JUDGMENT**